# CHARLESTON

## GODBEY *v.* CITY OF BLUEFIELD.

Submitted January 22, 1907.   Decided March 26, 1907.

1. MUNICIPAL CORPORATIONS—*Change of Street Grade—Damages.*

    In an action for compensation for injury to real estate, occasioned by the filling of a street on which it abuts, the measure of damages is the difference, less special but not general benefits, between the market value of the property as it was immediately before the alteration was made and its market value immediately afterwards.   (p. 605.)

2. SAME—*Elements of Damages.*

    The cost of filling a lot, so affected, and raising the buildings thereon, so as to put them on a level with the street as altered, cannot be included in the estimate of damages as elements thereof, unless it is necessary to so alter the condition of the property in order to preserve it from further injury or render it fit for use and enjoyment; but such cost and the loss incident to such alteration, resulting from the destruction of shrubbery and sod and injury to trees, may properly be considered in the case in subordination to the rule, determining the measure of damages, as showing the various uses to which the property was adaptable, in the condition in which the completion of the street improvement left it.   (p. 608.)

3. SAME.

    In such case it is error to instruct the jury to find for the plaintiff such damages as they believe him entitled to, less special but

not less general benefits, and authorize them to consider the expense of adjusting the property to the new. grade, the cost of filling, injuries to trees, fences, shrubbery and sod and raising the house, as things causing diminution in the value of the property, no other instruction being given in which the rule determining the measure of damages is set forth, and there. being no evidence tending to show that such cost, expenses and incidental loss are necessary to the preservation or enjoyment of the property.   (p. 609.)

4.   SAME.

It is error, in such case, to give the jury an instruction which authorizes them to consider, as an element of permanent damages, the subjection of the abutting property to liability to injury by the discharge thereon of surface water, collected by the street as altered and improved; since that cause of action is recurring and intermittent, not authorizing recovery of permanent damages, but only of such as have been sustained prior to the date of the institution of the suit.   (p. 608.)

Error to Circuit Court, Mercer County.

Action by Eliza J. Godbey against the City of Bluefield. Judgment for plaintiff, and defendant brings error.

*Reversed.    Remanded.*

H. A. RITZ, for plaintiff in error.

D. M. EASLEY and JAMES H. GOLLEHON, for defendant in error.

POFFENBARGER, JUDGE:

A judgment for $986.00, rendered by the circuit court of Mercer county, against the City of Bluefield, in favor of Eliza J. Godbey, for damages to her house and lot, occasioned by filling the street in front of it, to the extent of about four feet, is the subject matter of this writ of error; and the complaint is that the court erred in admitting evidence, giving instructions and refusing to set aside the verdict, for insufficiency of evidence.

To prove the public character of the street, the raising of which is alleged to have wrought injury to the plaintiff's premises, the testimony of one F. W. Atkinson and others to the effect that, at the time the fill was made, he was the street commissioner of said city, by previous appointment of its common council, and, as such officer, had made the change in the street or caused it to be made, was admitted over the objection of the defendant.   The ground of the exception to

the ruling of the court, upon which the assignment of error is predicated, is the character of the evidence offered and so admitted to prove the alleged official relation of the witness to the defendant. The propriety of proving the street to be a public one by showing it to have been worked and used as such by the proper city officers is admitted, but it is denied that the authority or official character of the person so working it can be established otherwise than by the record, showing his election or appointment.

Such evidence was admitted in *Campbell* v. *City of Elkins*, 58 W. Va. 308, and *Parrish* v. *City of Huntington*. 57 W. Va. 286, but, as it went in without objection, there was no occasion for determining the question now raised. The opinion in the former case, however, contains the following observation, concerning the decision in *Talbott* v. *King*, 32 W. Va. 6, in which the main proposition was applied: "The inquiry does not go to the extent of the directions under which he (the road surveyor) worked or his authority as an overseer. These inquiries seem to have been regarded as unnecessary in view of the presumption in favor of the regularity of the acts of public officers." No doubt the view that strict proof of appointment was dispensed with on the ground of reputation as to official character or notoriety of action would have been more accurate. Wigmore on Evidence, section 1228, says: "There has been much difference of practice in regard to requiring the production of the written appointment to office. * * * But the best practice seems to have excused production. * * * There seems thus to be recognized this additional class of cases of exemption. But the usual sufficient proof, in the courts where production is not required, is held to be the facts of acting as officers and of having a reputation as officer, or, in another form, of notoriously acting as officer." Of course the extent to which the best, or documentary evidence can be dispensed with depends upon the nature of the issue. When the question of title to the office is really not involved, and the issue is whether the state or municipal corporation is bound by the act of the person claiming, or alleged to be an officer, it obviously suffices to prove that he acted *colore officii*. Whether one who has acted as a road surveyor or street commissioner in improving a public highway was an officer *de facto* or *de*

*jure* is an immaterial matter in a case of this kind or in any other in which the fact of official recognition of a road or street as a public highway constitutes an element of minor importance. Though his title to the office be not perfect and indefeasible, his acts are valid and binding. Whether his title is good in point of law is not in issue. This principle is generally applicable in favor of all persons except the officer himself. In justifying his acts, he must ordinarily show himself to have been an officer *de jure*, but third persons whose interests are affected by his acts, need go no further ordinarily than to prove him to be an officer *de facto*. *Sohn* v. *Building Association*, 54 W. Va. 101; *Knight* v. *West Union*, 45 W. Va. 194; *State* v. *Carter*, 49 W. Va. 709; Code, chapter 7, section 15. The long list of decisions cited by Wigmore at section 2535 of his work on evidence shows conclusively that the relation of the fact in question to the main issue in the case warranted the trial court in admitting evidence of *de facto* official character. That the defendant is the municipal corporation as an officer of which the witness professed to act does not forbid the application of the rule. *Knight* v. *West Union*, cited. The numerous cases in which this Court has held proof of the working of a road by a road surveyor sufficient to establish *prima facie* its public character, proceed upon the same, or a similar principle. In them, it was not necessary to determine whether the county courts had unimpeachable title to the roads involved. It sufficed that they were in fact public roads. Had the contest in any case been between the county court and the land owner, on the question of the right of user in the public, a different rule of evidence might have been applied.

The objection does not seem to extend to the competency of the officer as a witness to his official character; but, if it did, no ground of incompetency is perceived, upon which it could be sustained. He is not in any sense a witness in his own favor. He is not a party to the action, nor a demandant of anything from the city, and his testimony is admitted between the city and a third party.

As the evidence was admissible both in respect to its character and the competency of the witness, the inquiry ends here, for its sufficiency in point of probative force and effect

is not, and cannot be successfully questioned.    It stands uncontradicted.

An exception to the action of the court in giving plaintiff's instruction No. 1, is here relied upon.    It reads as follows: "The court instructs the jury that if you believe from the evidence in this case that the plaintiff, Mrs. Eliza J. Godbey's house and lot were damaged by reason of a change of grade on Scott street, by the City of Bluefield, then it is your duty to find for her the amount of damages to which you believe she is entitled, less special but not less general benefits, and you are further instructed that in arriving at your verdict that it is proper for you to consider the expense of adjusting the property to the new grade, the cost of filling, injuries to trees, fences, shrubbery, sod and raising the house; in short you are to consider all things causing a diminution in value of her property referred to in this case."   The objection urged is that the instruction ignores the defendant's right to mitigation of the damages to the extent of the special benefits, that have accrued to the property from the improvement.    One of these benefits was the filling of a depression in the street in front of the house in which stagnant water stood, during a great portion of the time.    It cannot be consistently asserted that the element of special benefits was ignored, for it is expressly referred to in the instruction; but injury is said to have been done the defendant by the enumeration in the instruction of elements of diminution in value. As none of the facts so adverted to were in any sense disputed and the instruction did no more than point them out as proper for consideration in fixing the question of damages, the instruction did not assume the existence of any controverted matter, nor otherwise trespass upon the province of the jury, unless the failure to enumerate the items of special benefits, while directing attention to the elements of damage, can be regarded as having tended to mislead the jury.    The matter of benefits was in no way excluded from consideration. They were disclosed by the evidence, and, if the defendant had so requested, the court would no doubt have directed attention to them in the manner adopted respecting damages.    In the general terms used, the instruction covers the hypotheses of both parties.    The alleged defects are generality and lack of specification in that part of the instruction which relates to

the defendant's side of the issue.    No rule of principle is recalled or has been indicated under the operation of which want of specification of elements of damage or benefits, covered by general terms, will vitiate an instruction.

While not open to the objections just mentioned, the instruction, although dealing with the measure of damages, does not lay down the rule governing it.    The jury are not told, in it or in any other instruction given, that, in assessing the damages, they shall have regard to the impairment of the market value of the property.    An instruction given at the instance of the defendant does direct them to find against the plaintiff if they believe the property was worth as much immediately after the fill was made as it was worth immediately before.    While this instruction makes a partial application of the principle, it does not state it.    A mere possible result of its application is pointed out.    The jury are not told what to do in case they should discover a difference in value. Hence, it does not cure the defect in the instruction given at the instance of the plaintiff.    Failing to direct attention to the measure of damages, the instruction tells the jury to find the amount of damages to which they believe the plaintiff is entitled to, and, in doing so, to consider the expense of adjusting the property to the new grade, the cost of filling, injuries to trees, fences, shrubbery, sod and raising the house, just as if all this expense and loss had already been incurred or sustained, or would necessarily result from the alteration made in the grade of the street.    It assumes that such expense and loss will necessarily follow, and thereby virtually tells the jury that they may be included in the estimate of damages, and the verdict, read in the light of the evidence, discloses that the jury adopted such method.    As an obvious matter of fact, the fill may never be made, nor the house raised, nor the shrubbery and sod destroyed, and if such things should take place, the cost of the improvement, incidentally injuring the trees and destroying the shrubbery and sod, will manifestly add great value to the property.    The outlay will not only overcome the injury done by the alteration in the street, but add value to the property.    Though this added value may not be in any sense a special benefit accruing from the improvement in the street, it would necessarily have to be set off against the cost of raising the lot and

house to the level of the street. It appears here that the house is built on low ground so that in approaching it the street made a considerable descent, and in going from it it was necessary to go up grade. The fill in the street overcomes all this and places the street, at that point, more nearly on a level with other portions thereof. This makes it more convenient to go to and from the building, and if the house were raised to the grade of the street, the special benefit to plaintiff's property of the alteration in the street would be more apparent; and, if the house and lot were raised on a level with the grade of the street, and, therefore, more nearly to the level of the surrounding property, it would certainly be worth a great deal more than it was under former conditions. To make it so would involve all those things to which the instruction adverts as elements of damage. When they are done, if they should ever be done, they will add value to the property as well as overcome the injury resulting from the improvement in the street. Hence, it is manifestly wrong to include in the verdict all of the estimated cost of making the change. As the instruction virtually told the jury to do this, it was misleading, and, therefore, erroneous. We are not to be understood as saying these facts are not to be considered at all. While they are proper for consideration and admissible in evidence, they are to be subordinated to the rule governing the measure of damages, namely, the difference in market value of the property occasioned by the improvement, less the special benefits accruing to the property from the improvement. In determining this difference in market value, the adaptability of the property for all purposes, as it stood before the alteration in the street, and as it now stands, must be considered. It is capable of certain uses and has a certain value in its present condition. The trees, shrubbery, sod and house may all be preserved without filling the lot and raising the building, and all may be used as a place of residence, notwithstanding the possibility or desirability of altering its condition by raising it to the level of the street. Its present condition and its adaptability to the various uses to which real estate may be devoted, including that of rendering it more valuable and desirable by filling and otherwise, is all that the jury can consider in estimating its present value, one of the necessary steps in

ascertaining the difference between its present and its former market value.

There are circumstances under which it is proper to allow the jury to include in their estimate of damages the cost of making certain alterations in the premises. But such allowances can only be made when the alteration is necessary to the preservation of the property or the enjoyment thereof. In *Commonwealth* v. *Railroad Co.*, 3 Cush. (Mass.) 25, the plaintiff was allowed to recover from the railroad company the cost of raising the ground under the bridge of the company and around it by filling, and this cost was allowed, but the court was careful to put it upon the ground of necessity. Chief Justice Shaw said: "This instruction was correct. The claim was not to be allowed, because it conferred an incidental benefit on the respondents by filling up a tract of flats for their bridge, which the respondents might otherwise have themselves been at the expense of filling; but because it was a convenient and economical mode, on the part of the commonwealth, of securing their own flats for use and enjoyment, instead of building two long sea walls; the expense thus incurred being like that of fencing and the repairing of other damage incidental to the taking of the land. If this filling up saved the necessity of sea walls along the line of the railroad, which would otherwise have been necessary, it was no objection to adopting such expedient, if not more expensive than sea walls, that it conferred a benefit on the respondents. Some mode of securing their own grounds was a necessary incidental expense, and as such allowable." In *Thompson* v. *Railway Co.*, 27 Wis. 93, the cost of constructing a retaining wall along the line of the railway company over the plaintiff's lot was held to be a proper allowance, because it was necessary for the protection of the lot. Cole, Judge, said: "In consequence of the company running its road across the plaintiff's lot in the manner it did, it became absolutely necessary, for the protection of his property from further injury, to build and keep up a retaining wall." In *Marsden* v. *Cambridge*, 114 Mass. 490, the owner of a building was allowed to recover for the loss of support and shelter caused by the removal from the location of a highway the wall of an adjacent building which the owner thereof had allowed the plaintiff to use. Wells, Judge, said: "By the

laying out of the street the petitioner was deprived of the support and shelter for his house from the other part of the double structure which rested upon the land of his neighbor; and was consequently put to the expense of a new wall for his own part. * * * That security was taken away by the location of the street in such manner as substantially to destroy the part of the building upon the adjoining land, and render it unsuitable for further use or maintenance as a dwelling." In none of these cases, nor in any others so far found, is this principle carried so far as to authorize the recovery, as damages, of the cost of structures and improvements that will merely add to the convenience of the property for use or enhance its value. Obviously, a piece of property affected by an improvement, as that of the plaintiff has been affected, in this instance, remains valuable and can be used for many purposes, including that of residence, without the making of the extensive alterations and improvements referred to by this instruction. Many persons, if owners of it, might prefer to let it remain in its present condition. Others might prefer to fill the lot and raise the building. The advisability, as well as the possibility, of doing the one or the other, is a matter which would enter into the negotiation between a seller and a purchaser of the property, and its adaptability to use in either way may be in itself an element of value. These considerations show that the large estimate of expense for alterations and improvements which the instruction, by its generality and indefiniteness, allowed the jury to include in its estimate of damages, do not fall within the rule of necessity to which reference has been made.

Evidence tending to show that, on one occasion, water had been collected by the street, as improved, and cast upon the plaintiff's lot in such quantity as to cause it to flow into her cellar and render it damp for some time, having been introduced, the court gave at her instance the following instruction: "The court instructs the jury that if they believe from the evidence in this case that the City of Bluefield caused the embankment to be made in front of the plaintiff's property, and that the same caused surface water to be collected and cast in a body upon said property you may consider this fact in arriving at what damages the plaintiff is entitled to." The declaration alleges special damages from

this cause, but no witness names any sum or amount as the pecuniary measure of the injury so inflicted, nor is any special injury shown other than the mere dampening of the cellar or temporary standing of water therein. Neither for this nor for the liability to repetitions thereof, caused by the raising of the street, can permanent damages be recovered. Nothing but the actual damage done thereby or suffered therefrom up to the date of the bringing of the suit is recoverable in this action. *Henry* v. *Railroad Co.*, 40 W. Va. 234; *Field* v. *Brown*, 24 Grat. 74; *Staple* v. *Spring*, 10 Mass. 72. As the instruction, by the breadth of its terms, permits consideration of this circumstance in the estimate of general or permanent damages to the property, it is misleading and should not have been given. It tells the jury to consider it, without indicating in what connection or to what extent. It is susceptible of a double construction, under one of which it may have been proper and under the other certainly improper, and this uncertainty vitiates it. *Maddy Bros.* v. *Crockett*, 57 W. Va. 66.

For the errors aforesaid, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed. Remanded.*