6574

## MAYRANT v. CITY OF COLUMBIA.

DAMAGES FOR DEFECTIVE DRAINS BY CITY.—Where a city so negligently constructs its drainage pipes, laid to carry off surface water, that they do not carry off the water ponded on the lot of a citizen by raising the level of the street, but permit it to collect there and to deposit filth from the streets rendering the premises sickly and uninhabitable, it is responsible in damages to the owner under Code 1902, 2023. In this case, whether the defective construction of the drainage pipes was the proximate cause of this injury is for the jury.

Before KLUGH, J., Richland, July, 1906.   Affirmed.

Action by Mary G. Mayrant against City of Columbia. From order overruling demurrer, defendant appeals.

*Mr. Allen J. Green,* for appellant, cites: *This action will fall under Code 1902, 2023, or 2010a:* 74 S. C., 539; 39 S. C., 475; 40 S. C., 342. *Injury is consequential:* 51 S. C., 480; 43 S. C., 398; 40 S. C., 390; 70 S. C., 137; 38 S. C., 282; 58 S. C., 415; 12 Am. Neg. R., 455; 11 Ibid., 28. *And not within either act:* 54 S. C., 242; 43 S. C., 553; 64 S. C., 120; 30 S. C., 546.

*Messrs. Thomas & Thomas* and *Andrew Crawford,* contra, cite: *As to the construction of the act:* 53 S. C., 89; 2 Elliott on Roads & Streets, secs. 16, 17; 53 S. C., 577; 2 Dillon on Mun. Corp., sec. 990; 43 S. C., 201; 71 S. C., 173; 58 S. C., 415. *The city is liable for causing the waters to pond:* 62 S. C., 21, 27; 36 Am. Dec., 82; 93 Ill., 521; 11 A. C. Q. B., 87; 11 Hud., 594; 63 Barb., 185; 134 Ill., 569; Gould on Waters, secs, 271, 272; Angel on Water Courses, sec. 108, *et seq.;* 24 Ency., 549; 2 Dill. Mun. Corp., secs. 1042, 1051; 32 Am. R., 271; 101 N. Y., 136.

July 4, 1907.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.  The plaintiff brought this action against the city of Columbia, a municipal corpora-

tion of the State of South Carolina, for damages alleged to have accrued to her property on account of the negligent placing and construction of certain drains by the defendant.

The Circuit Judge overruled a demurrer to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The appeal raises the sole question whether this was error, and for its determination it is necessary to ascertain what are the facts stated. It is alleged that the plaintiff is owner of a lot on which there are several houses; that the city authorities changed and altered the surface drains on either side of plaintiff's property, which were sufficient to carry off the water, to underground pipes, at the same time filling and obliterating the surface drains and raising the adjoining streets and sidewalks from eighteen inches to two feet; that in consequence of the negligent manner of making the repairs aforesaid, and the construction of the terra cotta pipes which had been substituted for the open surface drains, and the defendant's neglect and mismanagement, the work was defectively done, in that the said terra cotta pipes were insufficient to carry off the surface water accustomed to flow there in times of rain and storm; that said terra cotta pipes were negligently laid without sufficient fall, and were defectively connected with the open drains, which, on account of the raising of the level of the streets, caused the surface water not discharged through the insufficient terra cotta pipes to flood plaintiff's lot; that frequent demand was made to the authorities, but no relief was given; that on account of said water collecting on plaintiff's lot, together with deleterious matter, and becoming stagnant there, plaintiff's property became greatly damaged; that sickness resulted and conditions became such that plaintiff could no longer rent her houses; and that plaintiff had in no way brought about the damage by her negligence.

The contentions of the defendant were: 1st. That the damage was caused by changing the drains for carrying off the surface water and by raising the level of the street

adjacent to plaintiff's property, which act defendant had a
right to do, and not by any reason of any defect in the street
or mismanagement or defect of anything used in the repair
of the street; 2d. That the alleged damage was caused by
surface water against which the plaintiff must protect her-
self, and against which defendant is not required to protect
her; 3d. That there is no damage, special or peculiar, to
plaintiff as distinguished from the public in general.

The plaintiff relies first on section 2023, of the Civil Code
of 1902, which is as follows: "Any person who shall receive
bodily injury or damages in his person or property, through
a defect in any street, causeway, bridge or public way, or by
reason of defect or mismanagement of anything under con-
trol of the corporation, within the limits of any town or
city, may recover in any action against the same the amount
of actual damages sustained by him by reason thereof. If
any such defect in a street, causeway or bridge existed
before such injury or damage occurred, such damage shall
not be recovered by any person so injured, if his load exceed
the ordinary weight: *Provided,* The said corporation shall
not be liable, unless such defect was caused by its negligence
or mismanagement: *Provided, further,* Such person has not
in any way brought about any such injury or damage by
his or her own negligent act, or negligently contributed
thereto."

The question here is, did the damages result through a
defect in the street, or by reason of defect or mismanage-
ment of anything under the control of the defendant. That
a municipality has the right to change the grade of its
streets, either by cutting down or by building up the sur-
face, and that no action for damages to property resulting
therefrom lies against it, is well settled in this State. Cer-
tainly such action on the part of the corporation often leads
to great inconvenience and expense, and often causes a
marked depreciation in the value of the property, yet the
right cannot be denied. As has often been said, such a
change is *damnum absque injuria.* It rests upon the prin-

cipal that the municipality has the same right to improve its property as the landowner has to enhance the benefits and convenience of his land. With the rights, however, come the corresponding liabilities. As was said by Farnham in his work on Waters and Water Rights, page 910: "Very few cases present the simple fact of changing the grade so that the course of the water between the adjacent land is merely altered. Additional facts usually exist, such as gathering of water, or the change of outlet for a flow coming from an extended territory. Either of these facts would give rise to an action against a private individual, and there is no reason why it should not do so against a municipality. * * * Of course, there are times of unusual storms, when the falling water would do injury in spite of all precautions; but in the ordinary case there is no reason why, with even ordinary care, a municipal corporation which has gathered the water from its streets into gutters should not conduct it to a natural outlet without injury to any one, and the failure to so do is such clear evidence of negligence that it should be required to show that the injury could not be avoided in order to relieve itself from liability." There then must be a line of demarcation between the legitimate exercise of the right to grade the streets and that action which, while changing the grade, is accompanied by other changes which result in detriment to abutting property owners. For instance, as is said in the case of *Inman* v. *Tripp*, 23 Am. Rep., 520, where a city is required to keep its streets in repair, and is authorized in the discharge of this duty to grade them and alter their grades, the city has no right to grade its streets so as to collect the water from a wide area, some of it from distant puddles or ponds, and bring it, charged with all the miscellaneous filth of the streets, to the margin of plaintiff's land, and empty it upon his land, and into his cellar and well, where the city also has the power to make drains and culverts. When such a result follows the only conclusion to

be reached is that the street is defective, and the municipality must be held responsible therefor.

Likewise with drainage. No one will doubt that, in the absence of a statute, the power to say whether a drainage system shall be established, when it shall be established, and in what manner it shall be established, is discretionary with the corporation. No person can claim drainage as a right where it is not provided for by statute, if the municipality does not choose to establish such system. It can in no case be held responsible for the ravages of surface water where such water follows its own course unmolested. Farnham on Waters and Water Rights (section 171a) and authorities there cited. When, however, the city authorities have consulted and adopted a certain plan of drainage, in other words, have exercised their legislative and judicial functions with regard thereto, the carrying out of this plan becomes merely a ministerial duty, and for negligence in the execution of it the town or city is liable. In a very extended note on the subject in 29 Am. St., 739, Mr. Freeman, quoting many cases to support his conclusion, says: "The authorities are numerous and uniform in holding that after the adoption of a plan of sewerage or drainage by a city, the manner of its execution by it becomes, with respect to the right of the citizens, a mere ministerial duty, and that for any negligence or unskillfulness in the execution or construction of the work, whereby injury is inflicted upon a private right, the municipality will be responsible." See, also, Dillon on Municipal Corporations, sections 1047-1051; *Tate* v. *City of St. Paul,* 45 Am. St., 500, and note; *Seifert* v. *City of Brooklyn,* 54 Am. Rep., 664, and cases cited. We must conclude, in the light of these and a number of similar cases, that such ill-constructed drains or sewers are defects in the street, or result from mismanagement in their construction. Therefore, the statute here relied on, so far as to the defect, is applicable.

It is contended, however, that the alleged damage was not the natural, proximate result of the defects. As has

often been said, perhaps no one point of law has led to more discussion or more conflicting decisions than the one above referred to. Each case that arises must to a large extent depend upon its specific facts. The fact, which in connection with certain given facts, might be a proximate cause of a certain result, under different circumstances might be a very remote cause. The proximate cause is not necessarily the fact immediately preceding the result complained of, but there may be a line of facts forming a series, the first of the series being the proximate cause. On this subject the Supreme Court of the United States in the case of *Railway Co.* v. *Kellogg,* 94 U. S., 469, 474, says: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place. 2 Bl. Rep., 892. The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding. In a succession of dependent events an interval may always be seen by an acute mind between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. * * * In the nature of things, there is in every transaction a succes-

sion of events, more or less dependent upon those preceding, and it is in the province of the jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time." See, also, *Lutz* v. *Railway,* 30 Pac., 916; *Harrison* v. *Berkeley,* 1 Strob., 525; *Pickens* v. *Railway,* 54 S. C., 503, 32 S. E., 567. From these authorities it will be seen that it would require no strained construction here to find that the damages alleged were the proximate result of the defendant's action. The surrounding levels were altered so that the water was thrown on plaintiff's property and injury resulted. It is true that the water was the cause of the injury, but we are not prepared to say as a matter of law that it was the natural proximate cause. This was a question of fact and should have been submitted to the jury. If we are not mistaken in these opinions, clearly the Circuit Judge was correct and the plaintiff has a right to maintain his action.

Section 2010a, of the Civil Code, is also relied on. It provides: "Whenever within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley, or other public thoroughfare, over the private lands, property adjacent or adjoining such thoroughfare, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage for such water through open or covered drains, except where the formation of the street renders it impracticable, along or under such streets, alleys, or other thoroughfares, in such manner as to prevent the passage of such water over private lands or property: *Provided,* That if such drains cannot be had under or along the streets, alleys, or other thoroughfares, then the municipal authorities shall have the power and authority to obtain under proceedings for condemnation as for highways on payment of damages to land-

owner, a right of way through the lands of such landowner for the necessary drains for such drainage.

Sec. 2. "That if any municipal corporation in this State shall fail or refuse to carry out the provisions of this act, any person injured thereby may have and maintain an action against such municipality for the actual damages sustained by such person." Having reached the conclusion that the above considered statute gave the plaintiff the right to maintain his action, we do not think it necessary to construe the last quoted act.

The contention of the defendant, however, is that the injuries here complained of were a nuisance *per se*, and the plaintiff has alleged no special nor peculiar damages. The facts alleged do not support this contention. It seems that the plaintiff's property was so situated that it alone was flooded and injured. The damage was peculiar to this special piece of land, and nowhere in the complaint is a single allusion made to other property. The neighborhood is not involved in the issue. This contention of the defendant, therefore, must be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.