# CHARLESTON.

CHARLES L. HICKMAN v. CITY OF CLARKSBURG *et al.*

Submitted November 13, 1917. Decided November 20, 1917.

1. DEDICATION—*Street—Right to Grade—Abutting Owners.*

    A dedication of a strip of land in a new addition to a city or town, for a street, impliedly confers right upon the city or town authorities, to grade the land so dedicated, to such an extent as to make it safe and convenient for general public use as a highway; and, though grading thereof may impair the dedicator's right of ingress and egress to and from a lot abutting on such street, he has no right of action for such injury. (p. 396).

2. SAME—*Street—Grading—Impairment of Access.*

    If the natural surface of land dedicated for a street is so rough, sidling or uneven as not to be reasonably suitable for use as a highway, actual use thereof in such condition, by the general public, for a long period of time, does not constitute establishment of the natural surface as the grade line of the street, and the municipal authorities may put the street in condition for reasonably safe and convenient use, by grading, without liability for incidental impairment of access to an abutting lot. (p. .396).

Error to Circuit Court, Harrison County.

Action by Charles L. Hickman against the City of Clarksburg and another. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*Melvin G. Sperry* and *L. C. Crile,* for plaintiffs in error.

*Osman E. Swartz* and *E. Bryan Templeman,* for defendant in error.

POFFENBARGER, JUDGE:

This complaint goes to a judgment for $134.33, against the city of Clarksburg, for alleged injury to the plaintiff's lot, occasioned by the lowering of the street grade in front of it.

There never was a formal dedication of the street in question. About twenty years before the excavation complained of was made, the plaintiff platted it and threw it open to public use, in the division of a small tract of land into town

lots. Not long afterward, he built a house on lot No. 5. He had sold all of the other lots fronting on Elliott Street, Nos. 1, 2, 3, 4 and 6, and buildings have been erected on some of them. Though it was laid out longitudinally with the slope of a hill on which it was located, the street never was graded to any extent whatever. Wagons could be driven over it and were, but it was not in reasonable condition for general and ordinary use by the public. Passing over a point or knob of land on which plaintiff's lot is located, from east to west, it had three slopes, one east, one west and one north, the latter being from side to side and the others with the direction of the street.

In September, 1908, the city established a grade line and authorized J. F. Dye to grade the street, he taking the dirt for his services and using it in the filling of a neighboring lot. After he had taken away a considerable quantity of earth and incidentally cut down the grade on the upper side of the street, about two or three feet, next to plaintiff's lot and about three or four feet from his property line, he discovered the work and stopped it.

Both the city and its alleged agent, Dye, having been made defendants and the verdict having exonerated Dye and held only the city liable, it is said the finding in favor of Dye necessitates a like finding as to the city, for, since both participated in the doing of the act complained of, they are both innocent or both guilty. The authorities cited for this proposition are decisions in cases involving only mere torts or wrongs incidentally inflicted in the execution of a rightful enterprise. In this instance, no wrong collateral or incidental to the city's enterprise has been done. The injury, if any, resulted directly from the work done by the city through its agent or servant, and that enterprise or work was within the power and authority of the city. The excavation was a legal and rightful act on the part of the city, wherefore its servant did nothing wrong. Notwithstanding the rightfulness of its act, however, the city is liable for injury occasioned to the abutting lot, because the constitution requires it to compensate the owner of private property for injuries inflicted upon it, in the construction of public improvement works,

unless the right of compensation therefor has been released or waived in some way. *Blair* v. *Charleston,* 43 W. Va. 62, 64; *Johnson* v. *Parkersburg,* 16 W. Va. 402; *Hutchinson* v. *Parkersburg,* 25 W. Vâ. 226.

The case was tried upon the theory of a building and improvement by the plaintiff, with reference to the natural grade of the street, treated and considered as a grade line impliedly adopted by the city, the street having been used in that condition by the general public. Decisions of this court, cited above, hold the change of a grade so fixed subjects the city to liability for injury to abutting property, but, in each of them, a road reasonably fit for use and publicly used was involved. Here we have only the unimproved space for a highway, used for several years, but really never converted into a convenient street or road. Upon this state of facts, it is submitted that the dedication of the way impliedly carried with it right in the city, to eliminate the irregularities of the ground, to such an extent as to make it suitable for general public use, without liability for interference with the mere right of ingress and egress. In some jurisdictions even greater power and authority is accorded municipal corporations. *Denver* v. *Bayer,* 7 Colo. 113; *Denver* v. *Vernia,* 8 Col. 402; *Montgomery* v. *Townsend,* 80 Ala. 489. Not as matter of actual decision, but as something germane to the principle involved in the case under consideration, Chief Justice Dickey said, in *Rigney* v. *Chicago,* 102 Ill. 64, the leading case in that state: ''It is not every change of grade made in a street, which may in effect impair the value of the lot in its vicinity, which is in violation of the right of the proprietor thereof. Such changes in the street as it may reasonably be supposed might be made for the improvement of the public highway, the purchaser of a lot upon a street must be assumed to have assented to when the purchase was made. The making of such changes is therefore no invasion of his right in that regard.'' Speaking of this as a legal proposition, Judge Dillon said in his work on Municipal Corporations, sec. 1685, 5th ed., ''If there are cases to the contrary we doubt whether they were well considered and think that they are not well decided.''

It is impossible, under our decisions, to give full recogni-

tion and application to this proposition. When a grade has been established and a road or street constructed and the abutting property improved in accordance therewith, a detrimental change of grade imposes liability. But none of our cases impose it for establishment of a grade for an unconstructed road and subsequent construction thereof in conformity with the grade. If buildings are erected on lots fronting on a mere space for a road, not suitable for convenient use without some improvement, there is nothing on which to base the assumption that the buildings were put up with reference to the surface of the ground as and for the street grade. There can be no such grade until the highway is constructed in some form and to some extent. There must be at least the equivalent of a fairly good ordinary country road, for nothing less will afford the lowest degree of public convenience or answer imperative public necessity.

The dedication is made for acceptance by the general public and the municipal authorities. It cannot be fairly considered as a gift of mere open and practically useless ground. Its acceptance by the latter imposes a public burden and duty to put it in a reasonably safe condition for use and makes the corporation liable for injuries due to failure to perform that duty. A gift of a highway right of way made with knowledge of absolute, legal, municipal necessity of improvement and maintenance, must carry the right of improvement, else it is not what it purports to be, a dedication of land for highway purposes. To leave it open, unimproved, unsafe and unfit for use, subjects the corporation to daily peril of liability for injuries on it, even in favor of the donor himself. Giving it with knowledge of this duty, how can he be deemed not to have intended it to be put in safe condition? The donor and donee necessarily had one common purpose, provision of a highway, and, without right of improvement in the donee, that purpose signally fails: To permit the donor to claim damages for such acts as are necessary to effectuate his own declared purpose, is utterly contradictory and inconsistent. It would enable him to deny and partially defeat the very use to which he has dedicated the land. Moreover, it would be absurd, to assume that a dedicator of land for

such purpose made the gift under the impression that the surface would not be disturbed in the enjoyment thereof. Even on perfectly level ground, some construction is necessary. The natural surface rarely, if ever, suffices for a road or street. Some grading must be done in almost every instance and the slightest cut or fill is a technical interference with the right of ingress and egress to and from abutting property.

As to the relative rights of the corporation and the owner of abutting property, respecting lateral support, it is unnecessary to express any opinion, since the excavation did not reach the property line and has not been extended to it by erosion. As to this, there may be a distinction between rights of way acquired by gift and those obtained by purchase or condemnation, but the facts disclosed here call for no discussion of that question. The conclusion here expressed asserts no more than that the donor of a right of way for a road or street impliedly releases the corporation from liability for such injury to his right of ingress and egress to abutting property, as is necessary to the construction of an ordinary road, one that is reasonably safe and convenient for public use.

The trial court rejected evidence tending to prove the road in question would have been dangerous for use with teams in winter weather, without grading, and two instructions, Nos. 4 and 7, which would have propounded to the jury, as law, the conclusion here expressed, and, in so doing, erred to the prejudice of the defendant. Instructions Nos. 5 and 6, asked for by the defendant and rejected, go far beyond the case made out by the evidence, and were properly refused for that reason. The ultimate right of the city respecting the street is not involved. The right of action grows out of what has been done only.

For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*