# CHARLESTON.

## M. B. RAY v. THE CITY OF HUNTINGTON.

Submitted January 29, 1918.    Decided February 5, 1918.

1. MUNICIPAL CORPORATIONS—*Change of Grade—Damages to Abutting Property—Amount.*

    If a street be opened upon the natural surface as a grade line and dedicated to public use and be so used, though the dedication be not accepted otherwise than by recognition and acquiescence and the owner of a lot abutting thereon build with reference to such grade knowing that public convenience and necessity may require it to be altered and it is altered whereby the value of the lot is depreciated, the municipality is liable for the injury to the lot only as if it were unimproved.   (p. 611).

2. SAME—*Change of Grade—Recovery—Constitutional Provisions.*

    If property be improved to conform with a recognized surface grade line, alterations therefrom whether done negligently or not entitle the owner, if not at fault, to recover for the injury thereby occasioned under section 9, Art. III., Constitution.   ·(p. 611).

3. SAME—*Change of Grade—Action for Damages—Waiver.*

    Joining in a petition requesting the paving of a public street does not operate as a waiver of the right to prosecute an action for the injury done to the property.   (p. 614).

4. SAME—*Municipal Action—Vote of Council.*

    Ordinarily a municipality acts only through its assembled council whose will can be expressed only by a vote embodied in some distinct and definite form.   (p. 609).

5. SAME—*Street Grade—Representation of Unauthorized Agent— Effect.*

   The representations of an unauthorized agent as to street grades not formally or definitely established does not bind the municipality. (p. 609).

6. SAME—*Change of Grade—Improvement—Recovery.*

   Though the owner of a lot abutting on a street with a natural surface grade line may ordinarily be entitled to damages for an injury to the lot occasioned by an alteration of the grade, he cannot recover for improvements thereon made with knowledge of the necessity for such alteration. p. 611).

Error to Circuit Court, Cabell County.

Action by M. B. Ray against the City of Huntington. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*F. M. Livezey,* for plaintiff in error.

*Daugherty & Riggs,* for defendant in error.

LYNCH, JUDGE:

This review deals with a judgment against the City of Huntington for the alleged impairment of the value of a lot abutting 80 feet on Davis Street, occasioned, it is claimed, by lowering the street grade in front of it. Although the street apparently formed part of, and co-ordinated with, the general municipal street system or plan, the city did not lay it out nor formally accept or adopt it; though the public did use it and the city exercised some control over it, as if it were a thorofare adopted for the general use of the public.

When and before plaintiff purchased the lot in 1912, the surface of the street remained, with slight variation, in its initial or natural condition and so continued until 1916 when the grading complained of was done under the direction of the proper municipal authorities according to the detail plan prepared by the city engineer and approved by them in that year.

Two partially inconsistent theories of liability are advocated, one by plaintiff, that the usage of the street by the public at the natural grade with the knowledge and ac-

quiescence of the city, the grant by it of a franchise to a public service corporation to occupy the street to plant telegraph poles, string and operate wires thereon, and the performance of certain labor by the city upon the street at the surface grade operated as such an establishment of the street grade as to prevent any radical departure from it injuring his property without liability for compensation; the other by defendant, that as the city had not until 1916 fixed any grade for Davis Street in that locality and that as plaintiff elected to improve his lot prior to the establishment of a grade he did so impliedly with knowledge of the right of the city to establish another and different one and when so established to improve the street relative thereto, wherefore he is not entitled to damages.

Though the declaration contained no averment, if any were necessary directly or inferentially, warranting the introduction of any evidence on the subject, plaintiff as a witness on his own behalf on the trial was permitted, over objection timely interposed, to testify and did testify that at his request an attache of the city engineering department located for him the corners of the lot and informed him what the grade of the street was; and that acting upon this information he lowered the surface of the lot and erected the building thereon, wherefore by way of an additional reason he concludes that defendant is liable for any injury due to a variation from the grade so reported. Ewing did by survey ascertain and did by stakes designate the lot corners about the time fixed by plaintiff, for which service the attache received the usual compensation; but this work did not pertain to the engineering department. Speaking from a memorandum in the office, Maupin, the city engineer, and Ewing admit the location of the corners and the receipt of the fee but say the memorandum shows no other work was done and the memorandum impliedly corroborates them. They agree also in saying in effect that no corporate action was taken by the city as regards the establishment of such grade until 1916, more than two years after the survey, and that they had no authority to fix grades at all.

Primarily, the legislative department of the state govern-

ment has the exclusive right to lay out and establish public highways and direct the performance of the work necessary and incident to the discharge of that duty. It alone could exercise supreme control over the highways including those within a municipal corporation. This authority and power of control over the streets located within the city the legislature could, and by a charter amendment passed in 1913 (Ch. 85, Acts) did, delegate to the defendant; see also sec. 28, ch. 47, Code. That power is ample and unlimited. The grant substituted the city for the legislature and endowed the former with all the authority possessed by the latter; and as a legislature can speak only by its record, so the same restriction applies to the city. When it undertakes to exercise the right conferred and perform the duty imposed, it can do so only by an ordinance, order or resolution regularly passed and recorded as required by sec. 38 of the charter (Acts 1901, Ch. 150), which shall be kept open and subject, whenever convenient, to inspection by any one interested in knowing what the corporation has done affecting his interest. The safe and only prudent course to pursue is to resort to this lawful source of information rather than to a department having no competent authority or right to do or perform any act or duty not lawfully intrusted to it, certainly not when to do so would violate the rule against the redelegation of a delegated power: *Sutherland* v. *Miller*, 91 S. E. 993. If plaintiff desired to know in 1913 whether defendant had established the grade and if so what it was, the desired information was available to him and it was his duty to apply to it rather than to accept and act upon the unauthorized advice of another; and if he failed to his detriment to do what ordinary prudence demanded, he, not the city, must suffer the inevitable consequences of the dereliction. *Moundsville* v. *Yost*, 75 W. Va. 224; *Rutherford* v. *Williamson*, 70 W. Va. 402. A municipality acts only through its assembled council whose will can be expressed only by a vote embodied in some distinct and definite form. Dillon, Munic. Corps. (5th Ed.) sec. 1677 and note. See also, *McCormick's Appeal*, 165 Pa. 386, and *Mattingly* v. *Plymouth*, 100 Ind. 545. Besides, one who deals with an agent must know whether the latter has been

commissioned to represent the principal in the transaction. These general observations are impotrant now only to show the irregularity of the ruling upon the admission of the testimony relative to this branch of the case, when objected to by defendant.

The authorities are not harmonious upon the question whether under a constitutional provision such as our sec. 9, Art. III, requiring compensation for property taken or damaged, an injury to property occasioned by a change from the natural or initial grade, one not regularly established by councilmanic action, requires the city to respond in damages for the wrong done. Some of them say no such liability ensues. There is, however, a general concurrence of decision that an owner who improves his property without regard even to a regularly established paper grade has no cause of complaint for the injury done; this upon the theory that it is not unjust or unfair but right, all interests being considered, that the purchaser should take notice of such grade and conform with it in afterwards placing improvements on his lot: *Denver* v. *Vernia,* 8 Colo. 399; *Reilly* v. *Ft. Dodge,* 118 Ia. 633; *Manning* v. *Shreveport,* 119 La. 1044; *Clinkenbeard* v. *St. Joseph,* 122 Mo. 641; *Omaha* v. *Williams,* 52 Neb. 40; *Groff* v. *Philadelphia,* 150 Pa. St. 594; *Gray* v. *Salt Lake City,* 44 Utah 204; *Jones* v. *Gillis,* 75 Wash. 688; *Blair* v. *Charleston,* 43 W. Va. 62; *In re Vyse St.,* 95 N. Y. Supp. 893. In other jurisdictions and here according to some decisions the rule is that where injuries result to property improved to conform with a recognized natural grade alterations therefrom whether done negligently or not entitle the owner to compensation.

There is in the record proof sufficient to warrant the assumption of the actual existence of a grade established by such use, in which the city acquiesced or which it recognized, as to impart to the highway the character of actual adoption by the authorities intrusted with control. This usage, acquiescence and recognition furnish the basis for assuming the establishment of a grade and does not preclude recovery merely because the municipality has not by an ordinance or resolution actually established a fixed grade for the street.

*Rutherford* v. *Williamson,* 70 W. Va. 402, and *Hickman* v. *Clarksburg,* 94 S. E. 501, cited and relied on by counsel, are not wholly inapplicable, but not controlling; the first because as appears from point 2. of the syllabus, abutting owners improved their lots with reference to the grade of a street unchanged by artificial means from its natural condition on lands where the city itself established the thorofares; the second, because the owner laid off the streets on his own land and devoted them to the use of the public by a dedication not accepted by the city and over which it exercised no control before the cause of action arose. *Harman* v. *Bluefield,* 70 W. Va. 129, does aptly state the rule applicable to the subject now discusseed to be: "If the public have been permitted to use an open street on the natural grade and the municipality thereafter improve the street and thereby cause injury to an abutting owner it is liable." This doctrine finds strong support in the cases cited infra.

The decisions of other states adopt the same principle and defend it as being most equitable to the owners of the property injured by the alteration of a natural grade relative to which they built to another grade whereby the market value was materially diminished; and at the same time as sufficiently conserving the public interest committed to the city whose duty it is to cause the least possible harm in making necessary street improvements: *Folmsbee* v. *City of Amsterdam,* 142 N. Y. 118; *Hunt* v *Village of Otego,* 145 N. Y. Supp. 495; *Davis* v. *Missouri Pacific Ry. Co.,* 119 Mo. 180; *Fayetteville* v. *Stone,* 104 Ark. 136; *Chapman* v. *Staunton,* 246 Ill. 394; *O'Brien* v. *Philadelphia,* 150 Pa. 589; *Eachus* v. *Los Angeles Ry. Co.,* 103 Cal. 614; *Sallden* v. *Little Falls,* 102 Minn. 358; *Stocking* v. *City of Lincoln,* 93 Neb. 798; *Hempstead* v. *Salt Lake City,* 32 Utah 261; *Pueblo* v. *Bradley,* 23 Colo. App. 177.

The applicability and aptness of these decisions to the facts proved would be conclusive upon the question of liability involved were it not admitted repeatedly by the plaintiff when testifying as a witness in his own behalf that when he purchased the lot and erected the residence on it he knew, or to use his own term "presumed," the natural grade necessa-

rily would be reduced or lowered by the city to render it more convenient for the use of the public.   Notwithstanding this knowledge or presumption, he proceeded thereafter to prosecute to completion the construction of the building then contemplated by him.   Is it consonant with justice and fairness under such circumstances to permit recovery for an injury to the building and lot or the lot without the building? Doubtless the anticipation of this inquiry prompted reliance upon the information said to have been furnished by Ewing representing Maupin, the city engineer, neither of whom had authority to fix a street grade anywhere in the city except subject to the approval of the municipal authorities and adoption by them.   Without such approval and adoption no grades could be fixed and if none were fixed what they were at any point in a street no one could know.

Logically what has been said introduces the further inquiry whether the owner of a lot who has caused it to be improved by the erection of a building thereon with respect to the initial or natural grade, knowing it necessarily would eventually be altered to serve the public use by rendering it more accessible and convenient, may recover for the injury done to the lot alone or the lot as improved where the injury results from changes in a grade made under the directions of a municipality in the exercise of a lawfully delegated power. On this subject there is not uniformity in judicial opinion. Some authorities do not sanction the distinction between the lot and the improvements thereon but permit the assessment of damages for the depreciation in the market value of the property as a whole.   See note to *Gray* v. *Salt Lake City, supra*, Ann. Cas. 1916 D, 1135.   This court among others, however, has differentiated as to the recovery where the lot was improved in disregard of a paper grade line already established but not yet carried into execution and has enforced the right to compensation for the injury done to the lot alone but denied it as to the buildings thereon: *Davis* v. *Missouri Pac. Ry. Co.*, 119 Mo. 180; *Groff* v. *Philadelphia*, 150 Pa. St. 594; *Blair* v. *Charleston*, 43 W. Va. 62; *Gray* v. *Salt Lake City, supra*.   The principles upon which these decisions are predicated and their rationale vindicate justice and fairness

and nowise depart from, but follow, the generally recognized rule precluding recovery for injuries resulting to buildings erected after adoption of a plan for street improvement showing the character and extent of the anticipated excavations, as held in New York, Colorado, Iowa, Louisiana, Missouri, Utah, Washington and other states: *Denver* v. *Vernia, supra; Davis* v. *Missouri Pac. Ry. Co., supra; People* v. *Board of Assessors*, 58 Howard Pr. 327; For a grade established by a recognized public use with the knowledge and acquiescence of the municipality ought to be given some if not as much consideration as a paper grade regularly adopted but on which nothing further has been done on the street to carry it into actual execution. For further discussion see *Blair* v. *Charleston, supra.*

While this right to compensation for injury to the lot without the building exists, is there such right of recovery for the injury done to the building also or the property as improved when the building was erected, notwithstanding the anticipated necessity for an alteration of such grade? The rationale of the differentiation is not difficult of discernment. No valid reason interfered to prevent plaintiff from purchasing the lot at the time he chose to buy it. That right cannot be denied. He acquired it when the street was at its natural grade supplemented by use, recognition and acquiescence, and by the municipal grant of a franchise. But not so as to the building. He improved the lot in anticipation of what has occurred, but not to that extent. Having made his election and assumed the risk he must endure the consequences: *Blair* v. *Charleston, supra; Davis* v. *Missouri Pac. Ry. Co., supra.* The fact admitted or presumed by him of the probability and necessity of the alteration while not foreclosing recovery for the injury to the lot does have that effect as to the building. It was within his power to prevent the injury to it but he failed in the attempt. He did not apply where application would have availed. This failure, however, does not relieve or benefit him now.

The only other important question is whether, as counsel argue, the joining of the plaintiff with others in a petition requesting the municipal authorities to pave Davis Street

operates to estop him to prosecute this action. There is also some diversity of judicial views upon this subject. As the compensation for damages to real estate rests upon a constitutional guaranty, a waiver of the right ought not to be lightly assumed or inferred. To do so would nullify and defeat the object of the provision. The framers of that instrument deemed it necessary, wise and prudent to protect the owner alike against damages to his property and its actual appropriation. A waiver or intention to waive the benefit certainly cannot clearly be derived from the mere request to expedite what the municipality could and doubtless would eventually do. His participation does not unequivocally imply a voluntary relinquishment of the right so guaranteed or operate to estop him to claim compensation for the wrong done: *New Decatur* v. *Scharfenberg,* 147 Ala. 367; *Barker* v. *Taunton,* 119 Mass. 392; *Jones* v. *Borough of Bangor,* 144 Pa. St. 638; *Lewis* v. *Borough of Darby,* 166 Pa. St. 613. Besides, the petition apparently did not contemplate a radical departure from the initial grade line. It only asked that the street be paved not that it be cut down, though naturally he would suppose some work of that kind was necessary. The more reasonable supposition is that the municipality would do nothing to impair the value of the property. The court therefore should have limited the proof to the diminution of the value of the lot in its unimproved condition and excluded the depreciation of the building.

What has been said suffices as a response to other questions presented and discussed by counsel and as the reason for reversing the judgment and remanding the case for a new trial.

*Reversed and remanded.*