16784

HOLLIDAY v. CITY OF GREENVILLE
(78 S. E. (2d) 279)

208

*Messrs. A. C. Mann and W. H. Arnold,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd and Mann,* of Greenville, *for Respondent,*

Oct. 7, 1953.

BAKER, Chief Justice.

The respondent (plaintiff below) brought this action against the appellant, City of Greenville, claiming damages in the amount of $2,500.00 which she alleged had been

caused to her property by the failure of the appellant to furnish adequate drainage for carrying off and disposing of the surface water from certain public streets when the natural drainage of the area in question was changed by the City by the installation of curbs, gutters and sidewalks.

The agreed statement of facts contains the following abbreviated statement of the contentions of the parties:

"The plaintiff contends that the defendant is collecting the surface water from its public streets in artificial channels, *i. e.,* concrete curbs and gutters and is discharging the same in concentrated form on her property. She further contends that under Section 7301 of the Code of 1942 and under Section 550 of the Ordinances of the City of Greenville the defendant is required, after demand, to take the surface water from its streets, away without injury to her as an adjoining property owner.

"The defendant contends that the curbs and gutters were installed at the request of the plaintiff and other property owners, that said curbs and gutters were properly installed without negligence on the part of the City, that plaintiff's lot was a low lot and was a natural drainage basin for the surrounding area."

The case was tried before the court and a jury in the County Court of Greenville County and resulted in a verdict of $1,500.00 in favor of the respondent.

Motions for a nonsuit at the close of respondent's testimony, and for a direction of verdict made by appellant at the close of the case, and for judgment *non obstante veredicto* or in the alternative for a new trial, were duly made and refused. A motion on the part of the *respondent* for a directed verdict, except as to the question of damages, was also made and refused. The case comes to this Court on appellant's exceptions embracing various grounds upon which the appellant contends that the respondent has not made out the cause of action set forth in the complaint or any other character of action and embracing other rulings by the trial Judge as hereinafter set forth.

Respondent is the owner of two adjacent lots on Woodvale Avenue in the City of Greenville. Each lot has a frontage of 70 feet on the Avenue and runs back a distance of 247 feet, more or less. One of these lots was acquired by the respondent in 1940 for a consideration of $440.00, and upon this lot a residence was erected by the respondent in 1941. About the year 1945 the respondent acquired for a consideration of $293.00 the other lot. No buildings have been erected upon this lot. It has a sharp downward slope and constituted a natural drainage basin for such of the waters flowing to and over it as required an outlet. In this respect it was much lower than the residence lot. It was planted with grass and shrubbery and was largely used for decorative purposes and as a playground for respondent's children and other children in the neighborhood.

In the further references herein to the said two lots, the vacant lot will be referred to as the lower lot and the other lot as the residence lot.

At the time of the acquisition of these lots by the respondent, Woodvale Avenue did not have curbs and gutters and in the area in question had no sidewalks on respondent's side of the street. There is no conflict between the parties on the proposition that the lower lot was drained, prior to the installation of the paving program involved in this controversy, by the natural flow of surface waters from the upper section of Woodvale Avenue. Such of the water as was not absorbed by the grass and shrubbery and trees on the vacant lot came to rest on the lower end of the lot and presented no problem in the utilization of the lot for the purpose to which it was put by the respondent.

According to the case made by the respondent, Woodvale Avenue at the point where the two lots are located, is now one of the better residence streets of the City. There has been a large increase in value of lots in this general location. Witnesses with experience in the real estate field testified that the lower lot had a value of $2,000.00 prior to the paving program here involved, and that by reason of the con-

centration and increased velocity of the flow of the water and the consequences thereof to the lower lot, this lot has been reduced in value to almost nothing. It would not be purchased by anyone for residential purposes so long as the present drainage situation continues.

These and other factors in the case come from the testimony proffered on behalf of the respondent. There is sharp conflict between this testimony and much of the testimony proffered by the appellant, but, of course, in our consideration of the correctness of the rulings made by the trial Judge on the factual phases of the case above referred to, we are not at liberty to weigh the conflicts in the testimony. We must accept as correct those rulings of the trial Judge which, standing alone, make out the factual case upon which the respondent relies.

With the general background above indicated, the complaint alleges that during the year 1950, the appellant constructed and installed concrete curbings and sidewalks on Mount Vista Avenue, which is a street adjacent to Woodvale Avenue, and on Woodvale Avenue; that in connection with said work the appellant had constructed a catch basin on Mount Vista Avenue, and another on Woodvale Avenue, the latter being located in front of the lower lot of respondent; that by reason of the curbs and gutters so installed by the appellant, the surface water on Mount Vista Avenue is prevented from flowing off onto the land on each side of the street as it formerly and naturally did, but is collected for a distance of several hundred feet and flows down the curbs to the aforementioned catch basins, where it is collected and discharged in concentrated form onto private property, and over such property to Woodvale Avenue, across Woodvale Avenue, and onto the respondent's lower lot.

It is further alleged that the surface water on Woodvale Avenue is collected in the curbs and gutters recently installed by the appellant, is carried down to the above men-

tioned catch basin, and is "discharged with great force and violence in concentrated form over the Plaintiff's property."

It is then alleged that as the result of the aforestated acts of the appellant, great quantities of surface water from the above named streets are poured onto the respondent's property, cutting a ditch through the same, washing away top soil, undermining trees, and in dry spells leaving stagnant water. It is alleged that in these respects, the lower lot is rendered unusable and the upper lot "less usable," and that as a further result of the above mentioned acts of the appellant, "great quantities of rubbish, silt, trash and debris are deposited onto the Plaintiff's property, creating an unhealthy condition."

On these allegations the complaint alleges that it is the duty of the appellant, "under the Statutory law of this State and the Ordinances of the City of Greenville to carry off and dispose of the surface water from the aforementioned streets, and that the Plaintiff has demanded that the Defendant do so, but Defendant has wilfully refused and continues to refuse to do so." And it is further charged that the said acts of the appellant in failing and refusing to provide adequate drains "for the collected and concentrated surface water from the aforementioned streets poured upon Plaintiff's property were negligent and wilful" and caused damage to the respondent's property in the amount of $2,500.00.

The answer of the appellant sets up three defenses. The first defense is in effect a general denial of the facts alleged by the respondent as the basis of her claims and of the legal conclusions which she relies upon. The second defense, in addition to the denial of the factual and legal matter upon which the respondent relies, is as follows:

"The defendant alleges that Lot No. 256 is the lowest lot and has always afforded a natural drain for the general vicinity, and that plaintiff well knew this when she purchased said lot, and knew that when the sidewalk and curbing was installed at her request that water from the street would

have to flow through Lot No. 256. Defendant specifically denies that any water from the street flows on Lot No. 255."

.The third defense is "that any damage suffered by the plaintiff is the result of an act of God resulting from unprecedented heavy rains in the year 1951."

The legal questions with which we will now concern ourselves emerge out of the substance of the testimony of the respondent offered in support of the complaint. Having in mind the constitutional and .statutory limitations on the liability of a municipality in matters of negligence and other torts, it should be first pointed out that the present case is not one based on common law negligence, but is one resting upon liability created by statute. This statute is Section 59-224 of the Code of 1952, Code of 1942, § 7301, and as far as pertinent here, is as follows:

"Whenever, within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare along such thoroughfare rather than over private lands adjacent to or adjoining such thoroughfare, such municipality shall, upon demand from the owner of such private lands, provide sufficient drainage for such water through open or covered drains, except when the formation of the street renders it impracticable, along or under such streets, alleys or other thoroughfare in such manner as to prevent the passage of such water over such private lands or property. But if such drains cannot be had along or under such streets, alleys or other thoroughfare, the municipal authorities may obtain, under proper proceedings for condemnation as for highways on payment of damages to the landowner, a right of way through the lands of such landowner for the necessary drains for such drainage. If any municipal corporation in this State shall fail or refuse to carry out the provisions of this section, any person injured thereby may have and maintain an action against such municipality for the actual damages sustained by such person."

(As enacted in 1902, XXIII Stat. at Large, p. 1038, and as carried forward into the Code of 1912, § 3026, and into the Code of 1922, § 4449, and into the Code of 1932, § 7301, and into the Code of 1942, § 7301, the statute reads as follows:

"Whenever within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare, over the private lands, property adjacent or adjoining such thoroughfare, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage * * *."

In the Code of 1952 the change was made without any apparent legislative authority, other than through the adoption of the Code as containing all of the statutory law of the State. The matters involved in the present litigation occurred in 1950 and thereafter, so that if the change in the law as above indicated made any substantial difference in the applicability of the statute to the present case, we would be confronted with the question whether the change in the law which became effective with the adoption of the Code in January, 1952, retroactively applies to the present situation. We, however, conclude in this connection that the verbal changes above referred to do not affect the cause of action set forth in the complaint, in that such cause of action would be equally within the statute as originally enacted and within the statute as presently codified.)

The question in this case—differentiating from other cases cited by appellant's counsel and relied upon in oral argument—rests upon the distinguishing facts that the paving program involved in the present case was not, as was the program in the case of *Hill v. City of Greenville, infra,* the result of a change in grade or drainage of a street or other project undertaken by some other public agency than the appellant before the respondent acquired her property, and of which she had notice; that prior to the installation of the paving program the respondent had no problems and sustained no damage, by reason of the natural drainage that

poured onto and across the lower lot; that the damage upon which the respondent relies was sustained and is a consequence of the appellant's paving program, by reason of the resulting concentration and increased velocity of the water draining onto and across the respondent's lot; and that in dry weather water stands in a ditch traversing respondent's lot, the ditch being the result of a process of erosion that did not become active until the program was instituted; and that the standing water formed itself into stagnant pools, with evident pollution, creating accumulations of refuse that aggravated the situation.

In other words, the question with which we are here concerned may be stated generally thus: A person purchases a lot in a residential area in the City of Greenville. The lot is located on a slope of a street, adjoining another lot upon which the party has constructed a residence. The residential lot is on higher ground. The surrounding conditions are such that the natural drainage of the area, across the lower lot, was sufficient to carry off the water and to render the lower lot usable. In this situation, the municipality altered the drainage conditions by the installation of curbs and gutters and drainage basins, with the result that water which formerly drained across the lower lot is concentrated, crossing the lower lot with considerable velocity, causing erosion and other damage which largely destroys the value of the lot.

With additional details filled in from the testimony, the question is whether, under the provisions of Section 7301 of the Code of 1942, the municipality is liable for the damage inflicted upon the property in question.

The general principles with which we are dealing are discussed in a well considered opinion of Mr. Justice Stukes in the case of *Hill v. City of Greenville,* 223 S. C. 392, 76 S. E. (2d) 294, 297. In that case the State Highway Department in 1921 improved a certain roadway by the installation of curbs and gutters. The plaintiffs had purchased their property in 1939. It was shown that as the result of the installation of the curbs and gutters the increase of the flow of

surface water into the street on which the plaintiffs' property fronted had ultimately found its way into a drainage ditch separating the plaintiffs lot from other property and upon the premises of the plaintiffs. It was an undisputed fact in the case that the damaging increase of water resulted from the Highway Department construction of the curbs and gutters some years before the property in question was annexed to the City. The annexation occurred in January, 1949. The demand of the plaintiffs, made upon the City after annexation, that it provide drainage which would protect the plaintiffs' property from the surface water which entered it through the ditch was ignored, whereupon an action for damages was brought by the plaintiffs under the provisions of Section 59-224 of the Code of 1952, Code 1942, § 7301. This Court held that the statute created no liability under the facts of the *Hill case* and that a verdict should have been directed for the defendant.

In dealing with the questions presented in the *Hill case,* this Court pointed out that the City should not be held liable for any delict of the Highway Department which was commited some years before the plaintiffs' property became a part of the City, and in referring to the statute above cited, the opinion states :

"The statute plainly contemplates positive action by a municipality to render it liable for damages under the terms of it. The words are, repeating, 'Whenever * * * it shall be necessary or desirable to carry off the surface water from any street * * *, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage', etc. In this case the city did nothing.; upon annexation, it took the territory, the plaintiffs' and others' lots and the streets as it found them, and until the city undertakes, quoting again from the statute, 'to carry off the surface water from any street * * * over the private lands,' no liability arises under the statute. *The city has so far not deemed it 'necessary or desirable to carry off the surface water from' Ackley Street. If and when it does, by any artificial or added*

*means, the terms of the statute may apply.* This we take to be the simple meaning and effect of the words of the statute, and there is no occasion to resort to rules of construction." (Emphasis added.)

It was pointed out that the only previous decision of this Court which directly involves the statute appears to be *Macedonia Baptist Church v. City of Columbia,* 195 S. C. 59, 10 S. E. (2d) 350, wherein a verdict for the landowner was affirmed. Differentiating the case from the Macedonia Baptist Church case, this Court said:

"It appears that the defendant city had opened ditches, widened roadbeds, paved streets, of one of which the grade was raised, and built an embankment alongside a creek which diverted the surface waters from their natural drainage and discharged them with great force upon the premises of plaintiff. Careful study of the judgment of the court is convincing that the verdict for plaintiff was allowed to stand because of these affirmative acts of the city and it is fairly inferable from the opinion that opposite result would have followed in the absence of such acts by the city which proximately caused the damage to plaintiff's property. The court referred to the fact that the city was carrying surface water to the property of the plaintiff and did nothing thereabout after notice; again it was said that the property was damaged by surface water thrown upon it by the city; and finally, quoting: 'It is useless to cite more of the evidence, there is much of it, to show that there was sufficient proof of negligence, on the part of the City tending to make it, under the statute, guilty of actionable negligence, to take the case to the jury.' It is thus clearly seen that the foundation of the recovery was damage which resulted from overt acts of the city which it failed to remedy after notice. The following is a further quotation from the opinion: 'As we have shown by the testimony hereinabove cited, only in part, through the active agency of the City, its agents and servants, *the natural flow or drainage of the surface water of Tree Street Alley was changed and cast upon plaintiff's property, and there is*

*ample evidence in the record that the surface water from paved streets and certain private property was so directed by the City as to send it down Pendleton and Huger Streets with accelerated velocity on the property of the plaintiff, and thus damaged plaintiff's property'. There was a multitude of injurious acts by the city in the Macedonia case, none here."*

(Emphasis added.)

As further supporting the principle above indicated, this Court in the *Hill case* quoted the following from the opinion in the case of *Mayrant v. City of Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A., N. S., 1094, as follows [223 S. C. 392, 76 S. E. (2d) 298]:

" 'No one will doubt that, in the absence of a statute, the power to say whether a drainage system shall be established, when it shall be established, and in what manner it shall be established, is discretionary with the corporation. No person can claim drainage as a right where it is not provided for by statute, if the municipality does not choose to establish such system. It can in no case be held responsible for the ravages of surface water, where such water follows its own course unmolested. Farnham on Waters and Water Rights, § 171a and authorities there cited. When however, the city authorities have consulted and adopted a certain plan of drainage, in other words, have exercised their legislative and judicial functions with regard thereto, the carrying out of this plan becomes merely a ministerial duty, and for negligence in the execution of it the town or city is liable. In a very extended note on the subject in 29 Am. St. Rep. 739, Mr. Freeman, quoting many cases to support his conclusion, says: "The authorities are numerous and uniform in holding that after the adoption of a plan of sewage or drainage by a city the manner of its execution by it becomes, with respect to the right of the citizens, a mere ministerial duty, and that for any negligence or unskillfulness in the execution or construction of the work, whereby injury is inflicted upon a private right, the municipality will be responsible." ' "

It is true that much of what is quoted above from the *Hill case* is more or less in the nature of dicta here, but such quotations nevertheless clearly present the general principles of law involved in the construction and application of the statute above cited, and express what appear to us to be sound rules for the determination whether a given state of facts presents a cause of action within the purport of the statute.

Counsel for appellant express apprehension that the affirmance of the judgment of the lower Court in the present case will open up a new area of litigation involving possible liability on the part of the City of Greenville running into many hundreds of thousands of dollars. This consideration, of course, cannot influence our decision on the question of law involved, where established legal principles compel the result announced in this case. But the material fact in this connection is that in a case of the present character, liability on the part of the municipality is restricted to cases in which the alleged damage resulted from the affirmative action of the municipality in so constructing and installing the system of curbing and gutters as to inflict upon the respondent damages not at all incident to the bare fact of the need or desirability of the project.

The rulings made in this case are of course limited to the facts before us. We are not to be understood as generalizing that a municipality is liable to adjacent property owners for damage resulting from the change in a system of drainage from natural to controlled drainage. As already pointed out, it is of the essence in this case that respondent's alleged damages resulted from destroying the natural drainage which for years sufficed to protect adjacent property owners from damage of the character alleged and proved by the respondent. Whether the execution of the project by the municipality involves errors or misconceptions as to the sufficiency and character of the drainage, or errors in the design of the project, the resulting damage to the respondent is made the subject of a cause

of action under the Code provision above quoted. The question of negligence is involved only in the sense that there is a statutory duty resting upon the appellant "to carry off the surface water from any street, alley or other public thoroughfare along such thoroughfare rather than over private lands adjacent to or adjoining such thoroughfare * * *", and a failure of the City upon demand to carry out this statutory obligation, with resulting damage to a property owner.

It is unnecessary for us to consider whether there is a foundation of liability on the part of the appellant otherwise than under Section 7301 of the Code of 1942 since the action was brought and tried under that statute. It might well be asked whether the alleged actions of appellant constituted a *taking* of property in the constitutional sense, and whether the various Code provisions relating to the construction and maintenance of streets, drains, sewers, etc., have any bearing here, but in view of the considerations already set forth, it is unnecessary to pursue this subject. See, for example, *Mayrant v. City of Columbia*, 77 S. C. 281, 57 S. E. 857, 10 L. R. A., N. S., 1094; *Faust v. Richland County*, 117 S. C. 251, 109 S. E. 151.

The appellant alleges error on the part of the lower Court in refusing to charge that in no event can a municipality be charged with the accumulation of surface water that may gather on private property as the result of rain or water in any other form that may fall from the heavens.

Assuming, without deciding, that this broad generalization is theoretically sustainable, we do not think that the refusal to charge was prejudicial. Under the general charge of the Court the jury could not have taken a view of the case other than that the respondent's right of recovery was conditioned upon proof of the fact that the concentration and increased flow of the water was attributable to the installation of the paving project. Otherwise expressed, the whole theory of the respondent's case, as presented by respondent's witnesses and embraced within the charge of the Court, was that the paving program was so

carried out as to increase the accumulation of water, and to increase the velocity of the flow and to create a concentration which never existed prior to the installation of the project.

We are satisfied that within the expressed limitations of the scope of this opinion, and under the terms of the above cited statute, we are compelled to conclude that the respondent made out a cause of action in her complaint (to which there was no demurrer) and by the testimony introduced on her behalf.

The appellant also excepts to the refusal of the lower Court to charge the jury as follows:

"I charge you that should you find for the Plaintiff in this action, that you cannot find any damage except for the additional surface water which flows over Plaintiff's land since the installation of the curb and gutter. In other words,· you must attempt to determine the amount of the surface water that flowed over Plaintiff's land before the installation of the curb and gutter, and the amount after such installation; and the Defendant shall only be liable for the excess or the difference in amount which flows over Plaintiff's land after the installation of the curb and gutter."

"It being submitted:

"(a) That said request was a clear statement of the law applicable under the issues,

"(b) That Defendant could not possibly be liable for water that flowed over Plaintiff's property prior to installation of the curb and gutter."

We find no error in the action of the lower Court in this respect. The requested charge goes too far. Obviously, it is impossible to determine, except in such very general terms as "greater," "more," "much," etc., the quantity of water which flowed over the respondent's premises prior to the installation and that which flowed over such premises after the installation. It is one thing to speak of the difference as "greater" or in analogous terms; it is a

very different matter and a most impractical one, to say that the jury *must determine* the amount of the surface water that flowed over respondent's land before the installation and the *amount* that flowed over it afterwards, and fix the liability only for the excess. Aside from this, we think that a fair reading of the charge of the trial Judge discloses the controlling principle that it is not the *amount* of the increase in the quantity of the water that flows over respondent's lot, that determines appellant's liability, but is the fact and amount of damage done by the flow as increased, having due regard to the fact that before the installation the drainage was adequate and entailed no damage to the respondent.

As already indicated, the title to the residence property in question in this case is in Mrs. Holliday. It is one of the contentions of the appellant that the installation of concrete curbing and gutters was done at the instance of Mrs. Holliday and her husband; that Mr. and Mrs. Holiday desired that the work be done, and by way of evidence of such desire, they signed a petition, along with other property owners whose lots front on Woodvale Avenue, requesting the city council to institute the improvements, and that in this regard the trial Judge erred in these respects: (1) that he charged the jury that there was no competent testimony that the respondent, either personally or through the agency of her husband, signed a petition for the installation of curbing and gutters, and that he therefore erred in charging the jury that the installation of the curbs and gutters involved a consent to the program, thereby estopping the respondent from claiming damages for the consequences of the installation in the matter of drainage of the respondent's property; (2) that the charge of the Court on this subject to the effect that there was no competent testimony that the respondent signed the petition for the installation of the curb and gutter program, constituted a charge on the facts.

The exceptions based upon these contentions of the appellant must be overruled. It is unnecessary in this case to deal with the matter of estoppel because we concur in the view of the trial Judge that there is no competent testimony upon which to predicate the appellant's claim that the respondent, either personally or through the agency of her husband, signed the petition upon which the appellant relies. If any such petition exists, it was not offered in evidence.

In view of the conclusion thus reached by us it follows that the question whether an estoppel based upon such petition must be answered in the negative, and that the charge of the trial Judge on this subject, if a charge on the facts, is irrelevant.

The reference to this subject in the charge to the jury should be treated as having the effect merely of the Court's direction to the jury that they should disregard the matter of the alleged petition; that for all practical purposes he was granting a direction of verdict against the appellant on this phase of the case.

In view of the holding thus made we find it unnecessary, as already stated, to deal with the legal question whether, where property owners petition or otherwise urge the municipality to make certain improvements, they thereby, by implication, absolve the municipality from any liability for resulting damage and injury which is not due to negligence in the prosecution of the project.

The decisions touching or dealing with this question are not in harmony and they do not include any decisions of this Court directly in point, but it might be mentioned that the following are among the cases which discuss the various phases of the problem: *Kirkland Distributing Co. v. Seaboard Air Line Ry.*, 109 S. C. 331, 96 S. E. 122; *Jennings v. Sawyer*, 182 S. C. 427, 189 S. E. 746; *Dunscombe v. Loftin*, 5 Cir., 154 F. (2d) 963, *certiorari* denied, 329 U. S. 722, 67 S. Ct. 65, 91 L. Ed. 626; *Ray v. City of Hunt-*

*ington,* 81 W. Va. 607, 95 S. E. 23, L. R. A. 1918D, 931; *Markiewicus v. Town of Methuen,* 300 Mass. 560, 16 N. E. (2d) 32; *Williams v. Sutter-Butte Canal Co.,* 82 Cal. App. (2d) 100, 185 P. (2d) 664; *Montgomery v. Alabama Power Co.,* 250 Ala. 441, 34 So. (2d) 573; *City of Texarkana v. Talbot,* 7 Tex. Civ. App. 202, 26 S. W. 451; *City of Greenville v. McAfee,* Tex. Civ. App., 230 S. W. 752; 18 Am. Jur., Eminent Domain, secs. 393, 394; 29 C. J. S., Eminent Domain, § 208; 63 C. J. S., Municipal Corporations, § 1260.

The appellant contends that the trial Judge erred in charging the jury that benefits to the respondent's property resulting from the improvements in question are not to be considered as offsetting the damage the respondent has suffered, "so you might disregard benefits altogether and confine your consideration to damages, if any."

The law on this subject is not entirely clear, though there is authority tending to support the charge of the trial Judge. See *Bramlett v. City Council of Greenville,* 88 S. C. 110, 70 S. E. 450; *Wilson v. City of Laurens,* 134 S. C. 271, 132 S. E. 590; 63 C. J. S., Municipal Corporations, § 1376, page 1140.

We note that the present case is to be differentiated from cases like *Wilson v. Greenville County,* 110 S. C. 321, 96 S. E. 301, where the matter involved was the acquisition by a public body of a right-of-way for a public highway. In that character of case there is of course a direct *taking* of property for public use for compensation. Here the project did not involve the *taking of property.* It concerns the consequences of the installation of a drainage system affecting the full enjoyment by the respondent of her property, free of the nuisance conditions created by the execution of the project by the appellant.

The damage suffered by the respondent is not of a general nature affecting the public generally in a given area; while the public may be generally benefited, the evidence discloses special damages sustained by the respondent which

in this record are not shown to have been inflicted upon others in the area. *Wilson v. Greenville County, supra.*

■ For the purposes of the present case it suffices to say that whatever the true rule may be respecting the deductibility of benefits, there was no testimony in the present case from which the jury could have concluded, under the rule contended for by the appellant, that the case involved indicated benefits for which the respondent could be charged in determining the amount and extent of the damage done to her property. And we observe, too, that the issue of benefits was not directly or indirectly presented in the pleadings.

Appellant charges further error by the trial Judge in permitting the respondent, over appellant's objection, to relate a conversation she had with a person who, she stated was a health officer of the City, the alleged error being that the time of such conversation was not sufficiently shown and that the individual was not sufficiently identified as a health department officer of the municipality.

Respondent testified on this subject that the individual in question came to her home in the summer of 1951, dressed in a blue uniform, and introduced himself as coming from the City Health Department. He stated that he was a City health officer and that he was inspecting the streams around that section of the City. The respondent asked him if the water standing on her lower lot was polluted and he said it was. She then asked him if anything could be done about the pollution. He replied that unless it was a "live stream" nothing could be done. While the initial questions asked this witness were objected to, the objection was not pursued or repeated when the respondent testified to the details of her conversation with the individual in question.

■ While the statements of one claiming to be an agent, respecting the fact of his agency or his authority to act, are not sufficient evidence of agency, we agree with the trial Judge that there was sufficient in the conver-

sation between the respondent and the individual in question to indicate that this individual was at the time performing the duties of a City health inspector. Under all of the circumstances disclosed by the record, we are satisfied that the jury were not influenced or misled by anything involved in the exception presently discussed, and that if any error was involved in the admission of this testimony, it was harmless.

We have carefully considered the remaining exceptions of appellant, some of which deal with the foundations of liability in a case of the present character, as hereinbefore discussed, and others of which are based on the contention that the trial Judge violated the constitutional prohibition against charging on the facts. We find no merit in such additional contentions.

The judgment of the County Court is accordingly affirmed.

STUKES, TAYLOR and OXNER, JJ., and PRUITT, Acting Associate Justice, concur.