# CHARLESTON.

## HARMAN v. BLUEFIELD.

Submitted March 15, 1910.   Decided December 12, 1911.

1. EMINENT DOMAIN—*Public Improvements—Changing Grade of Street—Damages.*

    If, by changing the grade line of one of its streets, a municipality injure the property of an abutting owner, it is liable. (p. 131).

2. SAME.

    If the public have been permitted to use an open street on the natural grade, and to build on lots abutting thereon with reference to such natural grade, and the municipality thereafter improve the street and thereby cause injury to an abutting owner, it is liable. (p. 132).

3. MUNICIPAL CORPORATIONS — *Public Improvements — Changing Grade of Street—Damages.*

    If a municipality extends its corporate lines so as to include

territory which had theretofore been laid off into building lots and streets, and thereafter permit such streets to be used by the public and later improves them, it thereby makes them public streets, and the municipality becomes liable for any injury to abutting lot owners occasioned by an alteration in the natural grade line of the street. (p. 131).

4.  EMINENT ' DOMAIN—*Public Improvements—Changing Grade of Street—Damages.*

The true measure of damages to a lot abutting on a street, occasioned by a change in the grade line of the street, is the difference between the value of the lot immediately before, and its value immediately after, the street improvement, less any special or peculiar benefits to the lot because of the improvement of the street, but leaving out of account such general benefits as accrue to it in common with other property similarly situated. (p. 135).

5.  SAME—*Public Improvements—Changing Grade of Street—Evidence.*

As an element affecting the value of his property, plaintiff may prove what will be the cost of any alterations in his property which have been rendered necessary, on account of the street improvement, to preserve it from further injury and render it fit for enjoyment. (p. 134).

Error to Circuit Court, Mercer County.

Action by M. K. Harman against the City of Bluefield and another. Judgment for plaintiff, and defendant named brings error.

*Affirmed.*

*Ritz & Ritz* and *D. E. French,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff brought an action against defendant to recover damages for alleged injury to his real estate, and recovered a judgment for $800.00, and defendant has brought the case here on writ of error.

Plaintiff is the owner of a corner lot, fronting 54 feet on Bland street and extending back along North street 100 feet, in the City of Bluefield. Early in 1905 he erected a wooden frame building upon this lot, and used it for a store and dwelling house combined. He also built a wood frame stable on

the back end of the lot. The house is 30x48 feet, and stands in the angle of Bland and North streets. At the time these buildings were erected the lot on which they stand was not within the city, but on the 1st of June, 1905, the corporate limits were extended so as to include it. There was a county road where Bland street now is, and plaintiff built his house with reference to the grade line of the county road. After the city had acquired jurisdiction over the new territory, it widened, and changed the grade line of the county road, and also changed the grade line of North street, and paved both of said streets, and granted a franchise to the Bluestone Traction Company, a corporation, to lay its tracks and operate its cars upon said streets. A branch, or natural drain runs across the lot between the house and stable and across North street, and the lot slopes from both ends towards the branch. In grading the two streets the city lowered the grade line by nearly a foot at the intersection of Bland street and North street, and elevated the grade line at the other corner of plaintiff's lot on Bland street, and also raised the grade line of North street along the side of plaintiff's lot from three to five feet in places, and erected a concrete culvert across the branch.

It is the well settled law of this state that a municipality is liable to an abutting lot owner for injury done to his property by changing the grade line of the street. *Johnson* v. *Parkersburg*, 16 W. Va. 402; *Hutchinson* v. *Parkersburg*, 25 W. Va. 226; *Blair* v. *Charleston*, 43 W. Va. 62.

But, it is contended, plaintiff was not entitled to damages on account of the elevation of the grade line of North street, because it was not proven that the city had ever, previous to the paving in question, established a grade line for that street. It is insisted that a municipality is not liable because of the establishment of a grade line in the first instance. It does not appear that North street was expressly adopted by city ordinance, as one of its public thorough-fares and opened to travel, but it does appear that it was used by the public, on the natural grade, as a public street for about two years before the improvement in question was made. The corporate limits were extended to include the territory embracing North street, June 1, 1905, but that was after

plaintiff had built his house with reference to the natural grade line. Witness George H. Hill, city engineer, says he does not know when North street was located; he was then city engineer, and had been such engineer since the 1st of June, 1905. If North street had been located by the city during his incumbency, he certainly would have known it. Therefore, while negative in character, his testimony proves that North street had been located by someone, other than the city, and opened to the public, prior to the extension of the corporate limits of the city. Consequently, when the city took in the new territory, it must be considered as having adopted North street as a public street. True, there is no formal ordinance opening the street to the public, but the improvement made on it, without change of its location, is sufficient evidence that the city adopted it, and permitted it to be used as one of its public streets, from the time its corporate lines were extended.

Plaintiff had a right to build his house to conform to the grade line of the county road, and natural grade line of North street, and if the change in the grade line, afterwards made by the city injured his property, it was an injury which entitles him to compensation. It was a damaging to his property, for the public use, and our Constitution says: "Private property shall not be taken or damaged for public use without just compensation; * * * ." Sec. 9, Art. III.

It is not necessary that the city should have first, by ordinance, established a grade line, and then afterwards have changed it, to constitute liability. The use of North street by the public from 1905 to 1907, when it was improved, and the grade line was changed, was tantamount to an adoption of the street with the natural surface as the grade line, and any subsequent change from that grade line, which injured plaintiff's property, rendered the city liable. *Hutchinson* v. *Parkersburg,* 25 W. Va. 226; *Blair* v. *Charleston,* 43 W. Va. 62; *Bor. New Brighton* v. *United Pres. Ch.,* 96 Pa. St. 331; *Jones* v. *Bor. Bangor,* 144 Pa. St. 639; *Davis* v. *Ry. Co.,* 119 Mo. 180; *Hickman* v. *City of Kansas,* 120 Mo. 110; *Bloomington* v. *Pollock,* 141 Ill. 346.

Plaintiff conveyed to the city a strip of land off his lot, along Bland street, for the purpose of widening that street,

and counsel for the city insist that he is thereby estopped to claim damages on account of any change made in Bland street. This is true, so for as it relates to any damages which might result from cutting the strip of ground down to a level of the grade of the old road, for such damages must have been contemplated, and are regarded as compensated for by the consideration paid ($220.00) for the strip of ground. In fact a part of the consideration recited in the deed is, that Bland street is to be widened and macadamized. But there is nothing in the deed to indicate that a change in the grade line was then contemplated, and we do not see on what principle plaintiff could be properly denied right to damages, if any, resulting from a change of the grade line, when the deed is silent on that point, and there is no evidence that plaintiff knew, when he made the deed that the improvement to be made contemplated a change in the grade line of the road, or street.

There was a wooden bridge over the branch which ran through plaintiff's lot and across North street, and in changing the grade of the street the city replaced this wooden bridge with a concrete culvert, and made considerable fill along the edge of plaintiff's lot on both sides of the branch. Plaintiff introduced evidence tending to prove that the culvert was not large enough to let the water pass through in times of high tide, and that it caused the water to overflow his lot, and injure his property. It is urged that the court erred in permitting this evidence to go to the jury, because, it is claimed, there is no averment in the declaration on which to base such testimony. The declaration, however, does contain the following averment, viz: "and the plaintiff avers that by reason of the said trespass committed by the said defendants that water has from time to time since the committing of the grievances aforesaid, been caused to drain and flow in and upon the aforesaid lot of the plaintiff and caused to soak, percolate and flow into and under the aforesaid dwelling house, as it otherwise would not have done, and it has thereby caused the floors and 'walls of' said house to become permanently damp, moist and mouldy, * * * ." While the law does not entitle plaintiff to damage on account of surface water cast upon his lot, unless collected and cast upon it in a body, still, we think the averment, above

quoted, is sufficient to admit the evidence objected to. It was not necessary to allege the particular manner in which the water was caused to flow upon the lot, the fact being alleged, the manner could be proven. It is one of the natural consequences of making the fill across the branch, that, if the culvert was made too small to carry the water, it would cause it to overflow the land above.

It is also insisted that the court erred in permitting evidence to go to the jury to prove the cost of constructing a concrete culvert entirely through the plaintiff's lot of sufficient size to carry the water of the branch. The admissibility of such evidence depends upon the existence of a necessity for such alteration or improvement, to preserve plaintiff's property from further injury and to render it fit for enjoyment. This Court held, in effect, in *Godbey* v. *Bluefield,* 61 W. Va. 604, that costs of making alterations in the premises was proper to go to the jury in estimating damages, if such alterations are necessary to preserve the property from further injury, or to render it fit for use and enjoyment. These are questions of fact; and the reasonable cost of such improvements is an element bearing upon the *quantum* of damages, because they affect the value of the property. If such improvements are necessary to preserve the property from further injury, the fact that the lot would be rendered more valuable thereby than it ever had been, is not a matter entitling the city to reduce plaintiff's damages by the amount of the enhanced value. Because the city's improvement of the street makes such alterations necessary for the preservation of the property, and if the alterations should not be made, the property would be of less value than it ever had been. Plaintiff and a number of other witnesses who testified in his behalf were asked what alterations would be necessary in plaintiff's property to preserve it from further injury and to render it fit for use and enjoyment, and they answered that it would be necessary to put a stone wall, or foundation, under the house and dispense with the use of the basement, or lower story of the house, which, plaintiff says, yielded him $120.00 a year in rentals; that it would also be necessary to cover the branch with a concrete culvert, and to bring the surface of the lot up to the level of the street. Their estimate of the cost of that

alteration ranged from $2,200.00 to something over $4,000.00.

The true measure of damages in a case like this is the difference between the value of the property immediately before, and its value immediately after, the improvement in the street was made, less any peculiar benefit to the property because of the street improvement. Any general enhancement in value of plaintiff's property, occassioned by the street improvement, which affects, in the same manner, the value of other property situate in the same vicinity with plaintiff's property, is not to be taken into account. Such general advantage to his property does not lessen plaintiff's damages.

The court below tried the case according to the correct rule as to the measure of damages. But, as is almost always true in regard to the trial of cases of this character, there is much and wide difference of opinion among witnesses as to the amount of damages plaintiff had suffered. A number of them testified that, in their opinion, the damages amounted to $2,-500.00, some put it at more than this. The plaintiff and his brother estimated it to be as much as $4,000.00. On the other hand a number of witnesses for defendant gave it as their judgment that the property was not damaged at all, that the benefit to the property off-set the damages. But, on their cross-examination, it is made to appear that their opinions were based on the fact that the property had been enhanced in value, in a general way, because of the improvement of the streets and the establishment of a car line upon them, and that all property in the immediate vicinity of plaintiff's lot was also enhanced in value for the same reason. It is, therefore, evident that those witnesses failed to leave out of account the general benefit accruing to plaintiff's property on account of the public improvement. As before stated, such general enhancement of value should not go to diminish plaintiff's damages. It is almost impossible to determine, with strict accuracy, the exact amount of damage suffered in a case like this. There is always a great diversity of opinion among witnesses who may be, and generally are, equally honest in their views. The jury did not adopt the opinion of any one witness as the basis for its verdict, because the verdict is less than half the amount fixed by any one of plaintiff's witnesses, and is largely in excess

of the damages estimated by any one of defendant's witnesses. One of defendant's witnesses, W. S. Foutz, admitted that, in his opinion, the property had been damaged as much as $100.00, leaving out of account the general enhancement of the value on account of the street improvement. But all of defendant's other witnesses were of opinion that the improvement of the street off-set the damage to the lot.

. It follows from what we have said that the court committed no error in giving plaintiff's instruction No. 1, and in refusing to give defendant's instructions Nos. 1 and 2.

Plaintiff cross-assigns error in the giving of defendant's instructions Nos. 3 and 4. But, inasmuch as he asks for an affirmance of the judgment, it is unnecessary to discuss these assignments. The judgment will be affirmed.

*Affirmed.*