# CHARLESTON.

### RUTHERFORD *v.* CITY OF WILLIAMSON.

Submitted June 3, 1911.    Decided February 27, 1912.

1. APPEAL AND ERROR—*Record—Scope and Contents—Bill of Exceptions.*

    A bill of exceptions is sufficiently identified if it be signed and certified by the trial judge, and designated in his certificate by the words, or numbers, placed upon it for identification, and be ·described in the same manner in the order making it a part, of the record. (p. 403).

2. MUNICIPAL CORPORATIONS—*Public Improvements—Damages—Change of Grade of Street.*

    If a municipality lay out and open its streets to public use on the natural grade, and permit lot owners to build on their lots abutting thereon, with reference to such natural grade, it becomes liable in damages to such lot owners for injury resulting from a subsequent change in the grade line. (p. 403).

3. SAME—*Torts—Acts of Officers.*

    A municipality acts through its authorized officers, and is not liable for the acts of such of its officers as have no authority in the premises. (p. 403).

4. SAME—*Public Improvements—Acts of Officers.*

    A city, whose council is given the power and authority, by its charter, to "open, alter, grade and keep in good repair" (its) roads, streets and alleys, * * * * * and "to order the pavement, sidewalk, * * * * * to be kept in good repair," is not liable to a lot owner, for the unauthorized act of its mayor in causing such lot owner to lay a sidewalk along the street in front of his lot in such way as to injure his lot. (p. 403).

5. SAME—*Public Improvements—Damages.*

    The true measure of damages to a lot abutting on a street, occasioned by a change in the grade line of the street, is the difference between the value of the lot immediately before, and its value immediately after the street improvement, less any special or peculiar benefits to the.lot because of the improvement of the street, but leaving out of account such general benefits as accrue to it in common with other property similarly situated. (p. 407).

(BRANNON, PRESIDENT, absent.)

Error to Circuit Court, Mingo County.

Action by A. G. Rutherford against the City of Williamson. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*G. R. C. Wiles* and *Campbell, Brown & Davis,* for plaintiff in error.

*Sheppard, Goodykoontz & Scherr,* for defendant in error.

WILLIAMS, JUDGE:

A. G. Rutherford recovered a judgment for $275 against the City of Williamson, in the circuit court of Mingo county, as damages for an alleged injury to his real estate, occasioned by excavations for the laying of side walks, on a level with the grade line of two streets abutting thereon, and the city has brought the case here on writ of error.

The motion to dismiss the writ, for the alleged reason that the bill of exceptions which embodies the evidence, was not properly certified by the judge and identified by the order making it a part of the record, must be overruled. There are a number of bills of exceptions, and they are all identified in the order by numbers, as No. 1, No. 2, etc. No. 1 embodies the evidence. It begins on page 14 of the record and ends on page 186. The judge signs a certificate, at the conclusion of it, stating that it contains all the evidence, and identifies it as "Bill of Exceptions No. 1." The vacation order, making it a part of the record, identifies it in the same manner. This makes its identity reasonably certain, which is all that the law requires. *Duckworth* v. *Stalnaker,* 68 W. Va. 197 (pt. 13 Syl.) ; *Marshall* v. *Stalnaker et al.* recently decided by this Court, and reported in this volume.

Plaintiff's lot is situated at the corner of Second avenue and Dickinson street, which were opened and used as public streets, on the natural grade line, for a number of years. Plaintiff had built his house with reference to the natural grade. His declaration avers that the city, thereafter, lowered the natural grade line of these two streets, and thereby damaged his lot. The declaration states a good cause of action, and the demurrer was properly overruled. *Harman* v. *Bluefield,* 70 W. Va. 129, 73 S. E. 296; *Blair* v. *Charleston,* 43 W. Va. 62.

But, counsel for the city insist that it has never changed the

grade line on Dickinson street, and has not established any grade line for that street. The majority of plaintiff's evidence proves that his chief cause of complaint is on account of an excavation along Dickinson street, which he made himself for the purpose of laying a public, cement sidewalk. This excavation was from four to five feet deep in places, and made it necessary for plaintiff to build a retaining wall to protect his lot. But if the city did not fix a grade line, and did not direct plaintiff to build the side walk, it ought not to be held liable. The proof is that the mayor employed an engineer to run a line on Dickinson street, and then told plaintiff to lay the side walk by the engineer's stakes, which plaintiff did. But the engineer was not the city engineer, nor is there any proof that the mayor was authorized to employ him, or that the council adopted his survey as the grade line, or that he ever reported his work to them. The mayor acted beyond the scope of his authority, and, the council not having ratified his acts, the city can not be held liable. A municipality acts through its authorized officers, and it can not be held liable for the acts of those who have no authority in the premises. In *Gardner* v. *City of St. Joseph,* 96 Mo. App. 657, 71 S. W. 63, the court says: "The city can only be held responsible for the acts of its officers and agents in changing the grade of a street when the change is authorized by ordinance." To the same effect is *Page* v. *Belvin,* 88 Va. 985, 14 S. E. 843.

By its charter the council of the City of Williamson is given power to "lay off, vacate, close, open, alter, grade and keep in good repair the roads, streets, and alleys * * * *; to regulate the width of the pavements and sidewalks on the streets and alleys and to order the pavement, sidewalk, * * * to be kept in good order," etc. The common council is the legislative body of the city, and to it the legislature has delegated the authority and power to determine the locations, and grades of its streets, and to keep them in repair. This authority, being delegated to the council, can not be, by it, delegated to another. Dillon, Munic. Corp. (5th. ed.), sec. 244; 2 Abbott, Munic. Corp., sec. 517; *Page* v. *Belvin, supra; Cross* v. *Morristown,* 18 N. J. Eq. 305; *Zottman* v. *San Francisco,* 20 Cal. 96; *Mayor* v. *Porter,* 18 Md. 284; *Ruggles* v. *Collier,* 43 Mo. 353; *Thomson* v.

*Booneville,* 61 Mo. 282; *Smith* v. *Stevens,* 10 Wall. 321.   This does not mean, however, that a city council, having control of the streets, can not delegate to someone else, or to a committee of its own members, the performance of merely ministerial duties, such, for instance, as making surveys, superintending the work of construction and the like.   But it can not delegate its authority where discretion and judgment are to be exercised, as in the case of opening a public street, or adopting a grade line for it.   In respect to these things it is invested with a legislative discretion, and the familiar maxim, that authority once delegated can not be redelegated, applies.   *Dancer* v. *Mannington,* 50 W. Va. 323; Brannon's Fourteenth Amendment, 212; 15 A. & E. E. L. (2nd ed.)   742.

There is no evidence in the record of any official action taken by the city council, in respect to Dickinson street.   Plaintiff introduced a copy of an order of the common council, passed on September 3, 1906, which reads as follows, viz: "On motion it is ordered that all property owners west of fill on 2nd Ave., to Prichard St., be compelled to lay a 6 ½ ft. concrete side walk, according to grade of City Engineer."   But this order does not embrace Dickinson street, which runs at right angles to Second avenue.   Moreover, there is no evidence that the city engineer ever located a grade line for Dickinson street.   After Day ran the line on Dickinson street, at the instance of the mayor, the city did a little excavating in the road, on that street, but not for the purpose of permanently improving the street, and the excavation was not down to the line run by Day.   But that excavation is not the thing of which plaintiff complains.   It is the excavation for the sidewalks, on both streets, which he says injured his property.   But there is no evidence that the city council authorized the laying of the sidewalk on Dickinson street, or that it adopted Day's grade line, and, consequently, no proof of the city's liability for the injury occasioned by excavating for the sidewalk on that street.   In building the sidewalk on Dickinson street, plaintiff seems to have acted on two erroneous assumptions:   (1) That the ordinance above quoted required him to lay a sidewalk on that street, and (2) that the mayor had the power, independent of the council, to establish a grade line which would be binding on the city.   But his misunder-

standing of the ordinance certainly would give no cause of action against the city, and the law is well settled that it can not be held liable for the unauthorized acts of its officers. So far as the record discloses, the mayor acted without color of authority in causing plaintiff to lay the sidewalk on Dickinson street. It was, therefore, error to admit evidence of damages in relation thereto.

In respect to the damages claimed on account of the excavation for the sidewalk on Second avenue, plaintiff's case stands on a much better footing. The city, acting through its council, established a permanent grade line, and paved Second avenue in 1906. But the city had, previous to that time, plowed and scraped it, and had lowered the natural grade, but just when the excavation was made does not clearly appear. Plaintiff bought his lot in 1901, and, if the work was done before that time, he can not complain of it. He says he thinks it was in 1902. But witness Thompson, who was one of the contractors that did the work, says it was in 1900, and a copy of the order of the council appropriating money to pay this witness and his co-contractor, Lemaster, for moving dirt in the streets, and making fills, bears date the 9th of November, 1900. This documentary evidence would seem to indicate that witness Thompson is more nearly correct in his recollection of the time than plaintiff is. However, the time of that work is not very material, for the reason that plaintiff himself admits that, if it had not been for the laying of the sidewalk on Second avenue, he would not consider that he had been damaged very much on account of the permanent improvement of that street. Furthermore, the testimony of Mr. Gaujot, who was then city engineer, proves that the establishment of the permanent grade line on Second Avenue by him in 1906, made very little change in the surface of the street from what he then found it. He says that the paving of the street raised the grade line, in front of plaintiff's property, from a foot to eighteen inches. This restored it more nearly to the natural surface grade than it was when he bought the lot. But the thing of which plaintiff complains is, the excavation which was made in order to bring the sidewalk down to a level with the curb line. If he was thereby injured, he has a right to recover, because the ordinance passed by the city council re-

quired him to lay a sidewalk on Second avenue, on a line with the curb. No witness, however, undertakes to state what is a fair estimate of the damages on Second avenue alone. The evidence, relating to damages, includes the damages resulting from the laying of sidewalks on both Second avenue and Dickinson street. The cost of building the retaining wall, along the line of plaintiff's property on both streets, is given as their estimate of plaintiff's damages, by many of his witnesses. The wall was built around the corner and along both streets, and the highest part of it is on Dickinson street. No witness gives a separate estimate of damages on Second avenue.

Plaintiff is entitled to such damages, if he has sustained any on account of the excavation on Second avenue, as will make him whole. But, in estimating his damages, the city is entitled to have set off against them, such special, or peculiar, benefits, if any, as have accrued to the property on account of the improvement. It is difficult to define what is meant by special benefits, and we will not undertake to give a general definition. But, whatever they are, they certainly are not such benefits as are shared, in common, by owners of other property situated on the same street. These common, or general, benefits, the property owner is entitled to, as a taxpayer, and, in estimating his damages, he is not to be charged with any enhancement in value of his property on account thereof. The rule for estimating damages, in cases such as this, is, no doubt, a fair one, but it is attended with such complications as to make its practical application difficult. It is hard to estimate the value of property, immediately after a street improvement, and leave out of consideration the general benefit accruing to it from the improvement. Yet this is what the rule requires, and, in view thereof, a property owner may be entitled to recover damages, notwithstanding his property may have a greater market value just after the improvement is made than it had immediately before. In *Harman* v. *Bluefield,* 70 W. Va. 129, 73 S. E. 296, recently decided by us, we laid down the following rule for estimating damages to property on account of street improvements, viz: "The true measure of damages to a lot abutting on a street, occasioned by a change in the grade line of the street, is the difference between the value of the lot immediately before, and its

value immediately after, the street improvement, less any special or peculiar benefits to the lot because of the improvement of the street, but leaving out of account such general benefits as accrue to it in common with other property similarly situated."

If the excavation for the sidewalk, on Second avenue, made it necessary to build a retaining wall to preserve plaintiff's property, and to protect it from further injury, it is proper for the jury to take into consideration the reasonable cost of building the wall, in estimating damages. *Harman* v. *Bluefield, supra, and Godbey* v. *Bluefield,* 61 W. Va. 604. Many of the witnesses testified that in their opinion, the cost of building the wall would be a fair estimate of the damage.

It was not error to refuse to permit counsel for the city, on cross-examining certain witnesses in relation to the matter of damages, to ask them if, in making their estimate, they took into consideration any special benefits accruing to plaintiff's property. Because there is no evidence of any such benefits. So far as the record discloses, all the benefits to plaintiff's property were general in their nature.

In view of what we have already said in respect to the want of evidence to prove any liability on the city for the improvement of Dickinson street, it was error to give plaintiff's instructions numbered one, and two. If they had authorized the jury to estimate damages on account of the change in Second avenue alone, they would have been correct.

Defendant's No. 1 was properly refused, because it does not correctly state the rule for the measure of damages.

It was error to refuse defendant's instructions, Nos. 6 and 7.

We reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed and Remanded.*