# CHARLESTON.

## JESSE JONES v. CITY OF CLARKSBURG.

### Submitted April 30, 1919.    Decided May 20, 1919.

1. EMINENT DOMAIN—*Change of Street Grade—Damages.*

   If a street, reasonably suitable for use as a highway, be opened and used upon the natural surface as a grade line, and it is recognized and treated by the municipality as a public street, and owners of lots abutting thereon build with reference to such natural grade before the adoption of a paper grade line by the municipality, such natural grade becomes the established grade, and the municipality will be liable to lot owners for damages resulting from the change of grade. (p. 258).

2. SAME—*Change of Established Grade—Damages—Subsequent Improvements.*

   Though an owner of a lot abutting on such a street purchased it after the municipality had established a paper grade line, but before actual physical grading conforming the street to that line, that fact will not preclude his recovery for damages to his lot when the natural grade is so altered; but he cannot recover for damages to buildings or other improvements or accessories erected after the adoption of such paper grade and in disregard thereof. (p. 259).

3. ADVERSE POSSESSION —*Streets—Encroachments.*

   However long continued, encroachments on a public road or street by an abutting lot owner, in this case steps leading to his property, will not confer title by adverse possession or prescriptive right thereto in any part of the thorofare, the right of the public to remove such encroachments being superior to that of the lot owner to maintain them. (p. 260).

4. MUNICIPAL CORPORATIONS—*Removal of Obstructions in 'Street— Liability to Abutting Owner.*

   Regardless of ownership of the fee subject to the easement of a public road or street, the public authorities may remove or cause the removal of any such obstruction, without liability to the owner of the abutting property, where such removal is necessary for the reasonable accommodation of the public, or in carrying out any system of street improvements, provided it is exercised prudently and reasonably, not willfully or arbitrarily. (p. 260).

5. EMINENT DOMAIN—*Changing Grade—Measure of Damages.*

   The true measure of damages to property abutting on a public street, occasioned by a change in the grade thereof, is the differ-

ence between the value of the property immediately before, and its value immediately after, the street improvement, special or peculiar, but not general, benefits to the property being considered and included in the latter value. ( p. 262).

6. SAME—*Change of Grade—Damages—Special Benefit.*

Where the grading and paving of a public street have specially benefitted and improved an abutting property, in addition to the general benefits shared by it in common with other properties similarly situated by reason of such grading and paving, the jury in determining the value of the property immediately after the improvement should consider and include therein the value of such special benefits. (p. 262).

7. SAME—*Change in Grade—Burden of Proof—Special Benefits.*

The burden of proving special benefits rests upon the party charged with the damage. (p. 262).

8. SAME—*Change in Grade—Damages—Evidence—Instruction.*

Where, as a result of the grading and paving of a public street, an abutting property owner is entitled to recover for an injury done to his lot, but not for that done to the buildings or other improvements or accessories thereon, evidence of the damages to be recovered should be clear and specific, and carefully distinguished from those which the jury are not to consider; and, to that end, questions directed to witnesses testifying to the impairment of value should specifically limit the answers to the value of the lot alone exclusive of the buildings or other improvements on it. (p. 266).

9. SAME—*Change in Grade—Damages—Elements.*

As an element in determining the damages sustained, plaintiff may show the cost of those alterations in his property, by way of adjusting it to the new grade of the street, which are necessary to preserve it from further injury and render it fit for use and enjoyment. But such evidence must be considered only in subordination to the rule governing the measure of damages, and as an element in determining the amount to which the owner is entitled. (p. 266).

10. SAME—*Change in Grade—Damages—Cost of Retaining Wall.*

The cost of a retaining wall, when rendered necessary to protect the property from further injury and fit it for use and enjoyment, may properly be considered, subject to the conditions mentioned above. (p. 268).

11. SAME.

In the absence of evidence to show the consent of the city to the

erection of a wall on its property, evidence of the necessity and cost of such wall should relate to one erected on plaintiff's own property, and not on that of the city.   (p. 268).

Error to Circuit Court, Harrison County.

Trespass on the case by Jesse Jones against the City of Clarksburg.   Judgment for plaintiff, and defendant brings error.

*Reversed and remanded for a new trial.*

*Homer Strosnider* and *F. O. Sutton,* for plaintiff in error.
*Charles G. Coffman,* for defendant in error.

LYNCH, JUDGE:

In this action, trespass on the case, brought to August rules, 1915, plaintiff recovered the judgment which defendant seeks to reverse for error committed upon the trial. The cause alleged as the basis of the recovery is an injury to a lot owned by him abutting on First Street in the City of Clarksburg and to two buildings erected on the lot after he purchased it, occasioned by a permanent improvement of the street made by a contractor acting under the direction and supervision of the city authorities in 1912. The chief grounds of complaint specified in the declaration, and to show which plaintiff introduced evidence, are: Alteration of the street grade; excavation and removal of a portion of the bank or knoll through which runs the line common to plaintiff's lot and defendant's right of way; the destruction of steps used by plaintiff to enter his premises from the street, and defendant's failure to restore them; a like interference with plaintiff's connection with the city water line in the street; and impairment of lateral support.

Plaintiff purchased the lot in 1908, and thereafter improved it by the erection thereon of two buildings without applying to the city authorities to inquire and ascertain where the street grade line, located and adopted by the city authorities in 1899 and represented on the map or plat of the city streets, was, and in which grade line, it appears, no alteration has

since been made, and with reference to which the work complained of was done. Though the paper grade line for that street had so been established and adopted, the street surface for years prior to the improvement had existed at its natural grade, though worked and cared for by the city authorities, and not until 1912 was the grade altered to conform to the paper grade established thirteen years earlier. Out of this alteration grew the injury of which plaintiff now complains. It is well settled in this and the majority of states that, if a street, reasonably suitable for use as a highway, be opened and used upon the natural surface as a grade line, and it is recognized and treated by the municipality as a public street, and owners of lots abutting thereon build with reference to such natural grade, before the adoption of a paper grade line by the municipalilty, such natural grade becomes the established grade, and the municipality will be liable to lot owners for damages resulting from a change of that grade. *Blair* v. *City of Charleston*, 43 W. Va. 62; *Harman* v. *Bluefield*, 70 W. Va. 129; *Rutherford* v. *Williamson*, 70 W. Va. 402; *Ray* v. *Huntington*, 81 W. Va. 607; 10 R. C. L. p. 174. A somewhat different rule may apply where a street recently dedicated is so rough and uneven as not to be reasonably suitable for use as a highway and cannot fairly be termed a constructed or improved road. *Hickman* v. *Clarksburg*, 81 W. Va. 394. But the facts of this case clearly distinguish it from the case last cited. Here the situation was such from long use and frequent recognition by the municipal authorities in working the street that the natural surface grade can fairly be said to have become the established grade.

Though an owner of a lot abutting on such a street purchased it after the municipality had established a paper grade line, but before actual physical grading conforming the street to that line, that fact will not preclude his recovery for damages to his lot when the natural grade is so altered; but he cannot recover for damages to buildings erected after the adoption of such paper grade and in disregard thereof. *Blair* v. *Charleston*, 43 W. Va. 62. There is "a general concurrence

of opinion that an owner who improves his property without regard even to a regularly established (street) paper grade has no cause for complaint for the injury done" to his buildings subsequently erected on his property abutting on the street later improved with respect to such established grade, "this upon the theory that it is not unjust, or unfair, but right, all interests being considered, that the purchaser should take notice of such grade and conform with it in afterwards placing improvements on his lot." *Ray* v. *City of Huntington,* 81 W. Va. 607.

This equitable rule forbids allowance of damages such as may have resulted to the buildings erected by plaintiff under the circumstances detailed, as he admits, and the court so instructed the jury trying the case. But whether, in view of the evidence submitted upon the trial of the issue joined, the jury, though properly instructed, may have been misled and included the values of the lots and buildings in their assessment of the amount of recovery to which they deemed plaintiff entitled, is a question answered in another connection. It suffices now to say that, if they did, clearly their finding at least to that extent is erroneous.

Likewise it is also true that, if the jury included in the assessment an amount chargeable to the destruction and removal of the steps by the city authorities or by the contractor performing the work of improvement under their direction and supervision, their verdict compromised the rights of the municipality to that extent also. When or by whom they were erected or since maintained does not appear, but they were there when plaintiff acquired title to the lot. The material fact, however, is their location in part at least within the boundary of the public right of way, though apparently not then or since within the traveled road bed, and not at any time during their existence obstructing the use thereof in any manner. Whether they did or did not obstruct the street, the consecutive owners, including plaintiff, did not thereby acquire the right to maintain them perpetually within the street right of way, but only while public necessities did not require their removal for the betterment of the street.

Their erection and maintenance within the street limits did not and could not affect the public rights in the street, "for the reason that there is nothing inconsistent with a public easement for the authorities to allow an abutting land owner the temporary occupation of a public highway not demanded for the present use of the public." *Ralston* v. *Town of Weston,* 46 W. Va. 544, 546. Until the contrary appears, the occupancy of any part or the whole of such street is deemed permissive however long it may have remained undisturbed; and although continued during many years, encroachments on a public road or street will not confer title by adverse possession or prescriptive right thereto in any part of the thorofare. *Ralston* v. *Weston,* cited; *Foley* v. *County Court,* 54 W. Va. 16; *Clifton* v. *Weston,* 54 W. Va. 250; *Elkins* v. *Donohoe,* 74 W. Va. 335; 3 McQuillin, Mun. Corp, § 1396; 2 Elliott, Roads & Streets (3d Ed.) §§ 1187 1188. And as a necessary corollary of these propositions, the city's right to remove the steps is superior to that of the occupant to maintain them, and the right of removal is coextensive with the limits of the right of way including the whole of its surface.

By no invasion of the boundary can an abutting lot owner deprive the public of their rights therein. And, regardless of the ownership of the fee subject to the easement, the public authorities may remove or cause the removal of any obstruction to the use of the street whenever it interferes with the consummation of a contemplated improvement of the street, whatever may be the character of the impediment. 3 McQuillin, Mun. Corp., § 1319; *Mt. Carmel* v. *Shaw,* 155 Ill. 37; *Robinson* v. *Spokane,* 66 Wash. 527, Ann. Cases 1913C, 1012 and note. In the Washington case cited the head note reads as follows: "Any right granted to abutting owners to plant trees in the street is a mere permissive right which may be revoked at any time; and the city may, on revoking the license, cause the removal of the trees, without liability to the owner of the abutting property, if such removal is necessary in carrying out any system of street improvements." A city has the right, and it is its duty, to remove and abate any obviously dangerous obstruction imparing the right of the

public to the unrestricted enjoyment of the thorofare. *Curry* v. *Mannington,* 23 W. Va. 15. That right, the authorities say, is not absolute but must be exercised prudently and reasonably, not willfully or arbitrarily. *Cartwright* v. *Liberty Tel. Co.,* 205 Mo. 126, 12 Ann. Cases 249; *Southern Bell Tel. Co.* v. *Francis,* 109 Ala. 224. These observations regarding the steps are pertinent and applicable alike in denial of the right asserted to recover for the injury charged to have been done to the water line installed as part of the improvements in disregard to the paper grade line previously established; and to the extent of any injury sustained by plaintiff respecting the steps or water line within the bounds of the street right of way no liability rests upon the city unless the public authorities willfully and arbitrarily caused the injury, of which there is neither allegation nor proof.

Having therefore shown that plaintiff upon proper proof of damage is entitled to recover for the injury to his lot, but not to the buildings or other improvements or accessories erected thereon after the establishment of a paper grade line, we shall next consider the measure of damages to be applied and the evidence offered at the trial relative thereto. Many decisions of this state declare the true measure of damages for injury to property abutting on a public street or road, occasioned by a change in the grade thereof, to be the difference between the value of the property immediately before, and its value immediately after, the street improvement, less any special or peculiar benefits to the property because of the improvement of the street, but not considering such general benefits as accrue to it in common with other properties similarly situated with respect to the improvement. *Godbey* v. *City of Bluefield,* 61 W. Va. 604; *Harman* v. *City of Bluefield,* 70 W. Va. 129; *Rutherford* v. *City of Williamson,* 70 W. Va. 402; *Compton* v. *County Court,* 83 W. Va. 745, 99 S. E. 85, recently decided. The existence and applicability of this rule was recognized by plaintiff and the trial court by the giving of plaintiff's instruction No. 1. Yet after more mature reflection we were persuaded to believe this to be the more accurate and intelligible statement of the rule. The true

measure of damages to property abutting on a public street, occasioned by a change in the grade thereof, is the difference between the value of the property immediately before, and its value immediately after, the street improvement, special or peculiar, but not general, benefits to the property being considered and included in the latter value.

While attaining the same result, the advantage of the new formula lies in the simplification of the former which required three steps, whereas the new rule requires but two. In either case the first value to be found is that of the property immediately before the improvement; the second, its value immediately thereafter. But it is in the determination of the second value that the distinction becomes apparent. Under the former the jury was supposed to find a theoretical value, excluding both special and general benefits due to the improvement. The difference between the value immediately before the improvement and that last found represented the total damage done to the property, without considering any benefits thereto. Against this damage there was set off the value of the special or peculiar benefits resulting to the property, as distinguished from the benefits common to all properties similarly situated, and the remainder expressed the balance the owner was entitled to recover from defendant.

Under the new statement, the jury in determining the value of the property immediately after the improvement takes into consideration the special or peculiar, but not general, benefits, and includes them in the valuation, instead of deferring them as required by the former rule. The difference, if any, between the values so found represents the sum which the owner is entitled to recover, no further deductions being necessary, as formerly they were. The result, however, is substantially the same under either rule, for it makes no difference whether the special benefits are deducted from the difference in values in the one case, or included in the value of the property immediately after the improvement in the other. In either event the amount of damages is reduced pro tanto. But there is this practical advantage. Under the old rule it was almost impossible for a jury to dismiss the

special benefits from their minds in determining the property's second value, with the result that they generally were counted twice, or not at all; first, when the value of the property immediately after the improvement was determined; second, when the special benefits were deducted from the difference in values. This difficulty the new rule to a great extent avoids.

An illustration may serve to make clear our meaning. Assume the value of the property immediately before the improvement to have been $2,500; its value immediately thereafter, without considering either special or general benefits, $2,000; and the value of the special benefits $100. By the old method, the difference in value before and after the improvement was $500, the total damage suffered, from which was deducted the $100 of special benefits, leaving $400 as the amount of the recovery. By the new rule, from the value immediately before is taken the value immediately after the improvement, considering and including therein special, but not general, benefits, i. e., $2,100, leaving the sum of $400 to be recovered. The results are substantially similar, but the difference lies in the method of approach.

The statement of the rule, however, is easier than its application, for the difficulty of separating special from general benefits is apparent on first thought. No attempt to define them will be made, but rather we shall permit the line demarking the one from the other to become clear as it is marked out by the gradual approach of decisions on the one side and on the other. Suffice it to say that only special or peculiar, not general benefits, can be considered under either rule. The reason for that, however, will be discussed more fully later.

Defendant apparently concurs in the rule as stated, but not in its application. By its instruction No. 2, refused, it sought to instruct the jury that "any benefit or enhancement of the value of the property of plaintiff caused by the grading and paving of First Street for the distance that plaintiff's property abuts upon said street is what is known in law as a special benefit." In support of that instruction

it contends that property enhanced in value by reason of a public improvement is specially benefitted, notwithstanding every other piece of property upon or near the improvement may, to a greater or less degree, be likewise benefitted. General benefits, it asserts, are such as are enjoyed by the public at large without reference to the ownership of private property adjacent to the public improvement out of which arose the benefits under consideration. Such may be the rule followed in some jurisdictions (*Metropolitan etc. Ry. Co.* v. *Stickney,* 150 Ill. 362; *Bohn* v. *Railway Co.,* 129 N. Y. 576; *Aswell* v. *Scranton,* 175 Pa. St. 173; *Kirkendall* v. *City of Omaha,* 39 Neb. 1; *Barr* v. *City of Omaha,* 42 Neb. 341; *Atlanta* v. *Green,* 67 Ga. 386;) and there are intimations to the same effect found in some of our earlier decisions. *Blair* v. *City of Charleston,* 43 W. Va. 62; *Ridgeley* v. *West Fairmont,* 46 W. Va. 445. But later decisions criticize and refuse to follow that doctrine (*Morrison* v. *Traction Co.,* 60 W. Va. 441, 446; *Railroad Co.* v. *Coal & Coke Co.,* 75 W. Va. 423, 436), and forbid the consideration of such general benefits as accrue to the property in common with other properties similarly situated. *Harman* v. *Bluefield,* 70 W. Va. 129; *Rutherford* v. *Williamson,* 70 W. Va. 402; *Compton* v. *County Court,* 83 W. Va. 745, 99 S. E. 85; 1 Elliott, Roads & Streets (3d Ed.) § 277. Of course where the grading and paving have removed difficulties of transportation, of ingress or egress which theretofore had peculiarly affected plaintiff's property, such are special benefits proper to be deducted. In so far as the instruction asserted that any benefit to or enhancement of the value of plaintiff's lot due to the improvement was a special benefit, whether shared by other properties similarly situated or not, it was erroneous and properly refused. But where the grading and paving of a public street have especially benefitted an abutting property, in addition to the general benefits shared by it in common with other properties similarly situated by reason of such grading and paving, the jury in determining the value of the property immediately after the improvement should consider and include therein the value of such special benefits, thereby de-

ducting them from the damages inflicted. It is scarcely necessary to add that the burden of proving special benefits rests upon the party charged with the injury. *Morrison* v. *Traction Co.,* 60 W. Va. 441, 448; *Rutherford* v. *Williamson,* 70 W. Va. 402, 408; *Railroad Co.* v. *Coal & Coke Co.,* 75 W. Va. 423.

Perhaps a simple illustration will serve to show why only special benefits peculiar to that property should be deducted from the damage caused, and not those benefits which are common to all properties similarly situated. Suppose a series of lots abutting on a common street, only one of which is injured by the grading and paving of that street. The one lot has suffered damage to the extent of $500, but has been specially benefitted to the extent of $100 by the removal of a deep and malodorous mud hole immediately in front of it, while every lot abutting on that highway, including plaintiff's, has been enhanced in value $250 by reason of the better grade and paving. Clearly the city has the right to deduct the $100 special benefit from the total claim, leaving $400 as the amount necessary to restore plaintiff's lot to the same relative value it bore to other lots on that street before the improvement. But what of the $250 benefit common to every lot due to a general enhancement of values because of the improvement? Should it also be deducted? Clearly not. For if it is, plaintiff is the only property owner on the street to lose the general enhancement of values common to all the properties, and to which he is entitled as tax payer. Every other owner retains his additional $250, and so should plaintiff, for the $400 restores his lot to the same relative value it possessed immediately before the improvement, thus placing it on a plane of equality with the other lots similarly situated, and ready to share with them in the general enhancement of values.

The jury having been instructed properly, it becomes necessary next to consider the evidence upon which was based the verdict of $950. As stated before, the only damages proper to be considered by the jury were those relating to the lot. Only one witness, however, the plaintiff, was asked ex-

pressly to consider the lot alone in estimating the damages which he had suffered. All the others, judging from the valuations which they gave and the questions which were directed to them, considered the damages to the buildings as well as to the lot. The questions were not properly phrased to enable the witness to differentiate between the two, though the court seems fullly to have appreciated the departure from the true rule and apprised counsel of the fact. Both sides were equally at fault in this respect, thus leaving the jury without guidance except for the one answer stating the damage to the lot alone, and that the testimony of the plaintiff, who on cross-examination fixed the value of the lot immediately before the improvement at $1500, and contented himself by saying that immediately thereafter he would not have given $500 for it, a damage of $1000 if true, two-thirds of the value of the lot. On the other hand, several witnesses for defendant in response to the general question whether or not plaintiff's property had been damaged by the grading and paving testified in the negative. Besides, neither the bare statement of plaintiff as to what he would not have given for the lot immediately after the improvement, a statement obviously exaggerated, nor the negative answer of defendant's witnesses to the questions propounded to them whether or not the street improvement had damaged the property, squarely met the conditions required in such cases. The true inquiry is not what he or any other witness would be willing to give, but what, if any, diminution in value has the property suffered in consequence of the improvement, deducting special, but not general, benefits in the manner hereinbefore defined.

The trial court was of opinion that there was sufficient evidence of the damage to the lot alone, when taken into consideration with the view of the premises had by the jury, and the instruction expressly restricting the plaintiff's recovery to the damage suffered by the lot, to justify the jury's consideration of the case on that basis. Great weight is given to a verdict based upon a view, and ordinarily it is permitted to control, even where other evidence supporting the verdict is weak. But where property valuations are concerned, es-

pecially where they are restricted to the lot exclusive of the buildings on it, there should be more evidence differentiating between the two than is present in this case. In view of the strict measure of liability and responsibility to which a municipal corporation is held in this state for damages resulting to property from changes of street grade, it is only fair that the evidence of damage for which plaintiff is entitled to recover should clearly and definitely be set before the jury, and carefully distinguished from that which they are not to consider. It is not sufficient that the court instruct them to consider only the damage done to the lot. There must be something more tangible than that for guidance. All of the testimony relating to valuation should be, and a fair proportion thereof must be, directed specifically to the lot alone. The evidence to guide the jury in its view and subsequent verdict is not, we think, as clear and definite as the circumstances required. The questions directed to the witnesses testifying to the impairment of value should clearly and specifically limit the answer to the value of the lot alone as distinguished from the improvements on it.

There is a further reason for our disapproval of the verdict and judgment below. As an element in determining the damages sustained plaintiff may show the cost of those alterations in his property, by way of adjusting it to the new grade of the street, which are rendered necessary to preserve it from further injury and render it fit for use and enjoyment. The cost of a retaining wall, therefore, when necessary to protect the property and fit it for use and enjoyment, may properly be considered by the jury. *Harman* v. *Bluefield,* 70 W. Va. 129; *Rutherford* v. *Williamson,* 70 W. Va. 402, 408; *Traction Co.* v. *Windom,* 78 W. Va. 390; 1 Elliott, Roads & Streets (3d Ed.) § 592. But such evidence must be considered only in subordination to the rule governing the measure of damages, and as an element in determinging the amount to which the owner is entitled. *Godbey* v. *Bluefield,* 61 W. Va. 604; *Compton* v. *County Court,* 83 W. Va. 745, 99 S. E. 85.

We are confronted with the difficulty here, however, that

such retaining wall, if built against the embankment as it now stands, will be to a great extent, if not altogether, on city property. The city's line extends four feet beyond the edge of the bank partially created by the excavation, and only at one or two places has the excavation extended across the property line. Of course, if the municipal authorities should deem it prudent to do so, they could permit a retaining wall to be erected on the street right of way beyond the curb, and plaintiff could accept and act on the privilege extended. But such consent, acceptance and action, nevertheless, would be subordinate to the right of the general public to the full and complete use and enjoyment for street purposes of every part of the right of way, and if erected, the authorities lawfully could require the wall to be removed whenever public necessity or convenience should demand such removal. But there is no evidence to show such consent on the part of the city, and in the absence thereof the cost of the wall should have related to one erected on plaintiff's own property, and not on that of the city. And it must be emphasized that the cost of such wall or other alteration necessary to preserve the property from injury and render it fit for use and enjoyment is to be considered only as an element in determining the amount of damages sustained, and must be subordinated to the general·rule relating to the prescribed measurement of damages, so often repeated in our own and many other decisions.

. For these reasons our conclusion is to reverse the judgment, and remand the case for new trial.

*Reversed and remanded for new trial.*