STATE BY STATE ROAD COMMISSION OF WEST VIRGINIA

*v.*

J. M. SNIDER, *et al.*

(No. 10028)

Submitted September 21, 1948. Decided October 12, 1948.

Fox, JUDGE, dissenting.

*Ira J. Partlow,* Attorney General, and *Eston B. Stephenson,* Assistant Attorney General, for plaintiff in error.

*H. F. Day* and *Walter G. Burton,* for defendants in error.

LOVINS, JUDGE:

This is a proceeding in eminent domain, instituted in the Circuit Court of Mercer County by the State of West Virginia, acting by the State Road Commission, against J. M. Snider and Henrietta Snider, his wife. The purpose of the proceeding is to acquire easements over certain lands belonging to J. M. Snider for the widening and reconstruction of a certain state road, which is a part of the primary system of roads, known as "Project U. G. 304 (3), Princeton Overhead and Approaches" located on Thorn

Street in the City of Princeton. Hereinafter the State will be designated as "applicant" and Snider will be designated as the "land owner", his wife having been joined in the proceeding only by reason of her inchoate right of dower in the land.

Upon the filing of a petition and after notice to the land owner, the trial court appointed commissioners to ascertain the just compensation to the land owner for the land taken, as well as damages to the residue. The commissioners reported to the court that in their opinion the sum of twenty-nine thousand dollars would be just compensation therefor. The applicant and land owner excepted to the report of the commissioners, and thereafter a trial by jury was had, which resulted in a verdict in the sum of $37,500.00. The court, having overruled a motion to set aside the verdict and grant the applicant a new trial, entered judgment on the verdict, together with interest thereon from the date of the verdict and the costs of the proceeding. To review that judgment, applicant brings the proceeding to this Court by writ of error.

J. M. Snider was the owner of two lots or parcels of land, hereinafter designated as "Lot No. 1" and "Lot No. 2", situate at the corner of Hines Avenue and Thorn Street. Lot No. 1, conveyed to J. M. Snider by deed dated the 15th day of December, 1921, is situate at the corner of Hines Avenue and Thorn Street, and abuts on Thorn Street for a distance of 163 feet, extending back along Hines Avenue 137 feet to an alley more or less paralleling Thorn Street. The record contains no clear description of Lot No. 2. However, it seems that Lot No. 2 is an irregularly shaped lot or parcel of land, adjoining Lot No. 1, and abutting 54 feet on Thorn Street and extending in a southerly direction an approximate distance of 100 feet.

Located near the center of land owner's property and abutting on Thorn Street are two two-story adjoining brick buildings, one of which is 40 feet deep and fronts 36½ feet on Thorn Street, and the other of which is 128 feet deep and fronts 30 feet on Thorn Street. Adjoining

these buildings is a shed, which is approximately 15 feet wide by 75 or 80 feet deep. On the corner of land owner's Lot No. 2 farthest from Hines Avenue is an old frame building fronting 25 feet on Thorn Street and running back therefrom 49 feet.

At the time of the trial J. M. Snider had possession of the properties and conducted thereon the business of selling lumber and farm equipment and machinery. He had two driveways constructed on his land entering from Thorn Street on either side of the brick buildings.

By this proceeding applicant seeks to condemn for road purposes three parcels of land situate on Thorn Street. Parcel No. 1 is a strip of land, more or less in the shape of an elongated right triangle, the hypotenuse of which is approximately 205 feet, the base approximately 203 feet, and the altitude 10.5 feet. The area of this parcel is 1,076 square feet, more or less.

The second parcel is a strip of land more or less in the shape of a right triangle, the two sides of which are approximately 12 and 8 feet, respectively, the other side being a curved line connecting the two sides and concave to the right angle. The area of the second parcel is 48 square feet, more or less.

The third parcel is to be used for a "construction easement" according to the petition filed in this proceeding, but the duration of such easement and the exact purpose for which it is to be used are not specified. The said third parcel commences at the right of way line established by the first and second parcels hereinabove described, and runs back into the land owner's property for varying distances, ranging in depth from 7 feet on Hines Avenue to 15.5 feet, more or less, at the western end of land owner's land. The area of the third parcel is approximately 2,750 square feet.

When reconstructed Thorn Street will serve as one of the approaches to a bridge to be erected by the State Road Commission over the railroad yards of The Virginian Railway Company in the City of Princeton. By such recon-

struction the elevation of Thorn Street will be raised approximately two feet at the intersection of Thorn Street and Hines Avenue, and gradually increases from such intersection along the southern line of Thorn Street to an elevation of between nine and ten feet at the western line of land owner's property. The proposed elevation of Thorn Street on the eastern side of the brick buildings will be approximately 3.3 feet, increasing to 6.5 feet on the western side of said buildings. Altogether about seventeen feet of the front part of the brick buildings will be included in the parcels sought to be taken, and it is conceded that the frame building on the western side of land owner's property will be a total loss as a result of the proposed work. There is some testimony to the effect, and it seems a reasonable assumption to make, that the two driveways entering land owner's property from Thorn Street on either side of the brick buildings cannot be used because of the increased elevation of Thorn Street along the northern line of the residue of the property.

The oral testimony introduced by the land owner is not uniform as to the value of the land and the amount of compensation due the land owner. It is principally opinion evidence, and witnesses testifying had varied opinions as to the value of the residue of land owner's property above and beyond all benefits after the taking of the land and the completion of the improvements contemplated by applicant.

Three witnesses were interrogated relative to the fair market value of the property sought to be taken, as well as the fair market value of the residue of the land, after construction work has been completed over and above all benefits that might be derived by the land owner from the construction of the improvements. Two of such witnesses testified that the present value of the land was $70,000.00, and the market value of the residue of the property, after completion of the contemplated improvements, allowing for all benefits, would be $15,000.00. The other witness testified that the same values, respectively, would be $73,300.00 and $25,300.00.

Six witnesses, including J. M. Snider, were asked questions, the purpose of which was to obtain their opinions as to the "fair and just compensation to Mr. Snider for the land taken by the proposed proceeding and damages to the residue of his land, if any, over and beyond all benefits that he may derive by reason of the construction of this road." The responses to said questions made by said witnesses were, respectively, $49,000; $65,500; $57,000; $60,000; $50,000; and $71,851.68. Each of said six witnesses, in support of his opinion as to the amount of damages, made estimates of the then fair market value of the entire land and the fair market value of the residue of the property over and above all benefits after the reconstruction of the street. Two other witnesses gave their opinions as to the fair compensation for the land taken and damages to the residue of the property over and above all benefits. Each of said two witnesses made a detailed break-down of the various items on which they based their estimate. The items included by them involve the cost which the land owners would have to incur in order to place the property in the same condition in which it was at the time of the trial. The two witnesses made estimates of the compensation and damages, respectively, as $62,389.56 and $59,437.00.

Another witness estimated the present value of the property, but was unable to estimate or give his opinion as to the value of the residue after completion of reconstruction of the street, less benefits. Said witness did, however, estimate the cost of restoring the three buildings, which he considered would be completely lost by reason of the taking of the land and the reconstruction of the street.

Some of the witnesses admitted on cross-examination that portions of their estimates were based on the cost of filling the residue of land owner's property so as to bring the same up to the level of Thorn Street. Some of said witnesses included in their estimates the cost of retaining walls which would be necessary to hold the fill so made. Four of the witnesses testified somewhat meagerly that they believed the residue of the property could not be

used unless a fill was made thereon so as to bring the land owner's lots up to the new street level.

The testimony offered by applicant regarding the damages ranged from $17,800.00 to $18,500.00. The witnesses for the State gave the elements of compensation as being the value of the land taken, damages to the buildings, and damages to the residue of the land.

A consolidation of the assignments of error made by applicant is as follows:

(1) That the court erred in admitting certain evidence over applicant's objections;

(2) That the court erred in holding that interest is payable on the recovery from the date of the verdict; and

(3) That the verdict is excessive.

In this proceeding the principal, if not the only, question is the amount of compensation for the land taken and damages to the residue. The value of land taken by a proceeding in eminent domain is an elusive question. The same situation obtains with respect to the amount of damages caused by the construction of an improvement abutting on land not taken.

Judicial reasoning in condemnation proceedings on the question of compensation and damages in some instances is affected by statute providing rules for guidance in the assessment of damages. However, in this jurisdiction the rule as to the true measure of recovery in a condemnation proceeding has been frequently stated by this Court. The rule is that the measure of recovery is the fair market value of the land actually taken at the time it was appropriated, plus the difference between the fair market value of the residue of the land immediately before and immediately after the taking, beyond all benefits which may accrue to the residue from the construction of the improvement for which the land is taken and damaged. *Guyandot Valley R'y Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 821; *State* v. *Sanders,* 128 W. Va. 321, 36 S. E. 2d 397;

*Strouds Creek & M. R. Co.* v. *Herold,* 131 W. Va. 45, 45 S. E. 2d 513. The foregoing is the dominant and controlling principle elsewhere. See 18 Am. Jur., Eminent Domain, Sections 243 and 353; *Chairman of Highway Com'n of Virginia* v. *Fletcher* (Va.), 149 S. E. 456.

However, the applicant says that, treating the foregoing rule as the true measure of damages and the controlling legal principle, the trial court may not permit itemization of the damages to the property. A consideration of this contention shows the difficulty of applying a rule of procedure in accord with applicant's contention. When it is remembered that practically all oral testimony with reference to the market value of the land taken and damaged is opinion evidence, how could a court prevent the mental operation by a witness who takes the number of individual estimates as to the damage done, particularly to improvements, trees and other things on the land, adds the items and from such sum arrives at an over-all opinion as to the total amount of compensation and damages, Courts cannot search the minds of witnesses testifying. Of course, jurors and witnesses should be instructed and cautioned that the true and controlling measure of damages is that above noted.

This Court, commencing with the case of *Godbey* v. *City of Bluefield,* 61 W. Va. 604, 57 S. E. 45, has held that items of damage are proper for consideration and are admissible in evidence, but that the true and controlling rule as to the measure of damages, as above stated, governs. See *Harman* v. *Bluefield,* 70 W. Va. 129, 73 S. E. 296; *Compton* v. *County Court,* 83 W. Va. 745, 99 S. E. 85; *Jones* v. *City of Clarksburg,* 84 W. Va. 257, 269, 99 S. E. 484; *Peddicord* v. *County Court,* 121 W. Va. 270, 3 S. E. 2d 222; *State* v. *Sanders, supra.*

But before such elements are to be considered as having any bearing on the damages, it must be shown that the expenditures for repairs, replacements and alterations to the improvements and premises are necessary to render them fit for use and enjoyment and to prevent further in-

658

jury to the residue of the property. *Godbey* v. *City of Blue-field, supra; Harman* v. *Bluefield, supra; Traction Co.* v. *Windom,* 78 W. Va. 390, 88 S. E. 1092; *Compton* v. *County Court, supra; Jones* v. *City of Clarksburg, supra; Wood* v. *County Court,* 100 W. Va. 29, 129 S. E. 747; *State* v. *Sanders, supra.*

As above indicated, it is difficult to prevent a witness from giving his opinion that a certain amount represents the just compensation, which amount is derived by addition of various items, but we do not think that this record definitely shows that the witnesses testifying for the land owner were controlled in their opinions by the totals of the various items involved in their estimates of compensation and damages. It will be noted that in many instances the witnesses were first interrogated with reference to the fair market value of the land taken at the time it was taken, as well as the difference in the fair market value of the residue of the land immediately before and immediately after the taking of the land.

As above stated, direct oral testimony with reference to the necessity for fills, retaining walls and repairs to the brick buildings is meager; but there is other evidence in this record bearing on that question. Blueprints filed herein show that the improvement and reconstruction of Thorn Street require a fill of two feet to more than nine feet. The oral testimony also shows that approximately seventeen feet will be taken off the northern end of the two brick buildings, and that the windows, doors and floors of said buildings must be raised. Furthermore, the jury viewed the premises. The purpose and effect of a jury's view of the premises is fully discussed in *State* v. *Sanders,* 125 W. Va. 143, 23 S. E. 2d 113. When all of the foregoing is considered, we are of opinion that the land owner made a sufficient showing that the repairs to the brick buildings, the fills on the land not taken, and the construction of retaining walls are necessary to make the residue of the land fit for use and enjoyment, and to prevent further injury to the remaining portions of the brick buildings.

We do not wish to be regarded as saying that the cost of the fills, the retaining walls and the repairs to the brick buildings, is, of itself, the measure of damages in those respects. It is quite possible and probable that the fills and the retaining walls would actually enhance the value of the residue of the property. It is obvious that, although necessary to repair and alter portions of the brick buildings, those portions so repaired and altered will be in a better condition than the present structures. Thus it is apparent that all benefits derived by such necessary fills, retaining walls and repairs to the brick ·buildings so enhancing the value of the residue of the property beyond its present value must also be taken into consideration and deducted in arriving at the true net compensation for the residue of the property. Nevertheless, the cost thereof is admissible evidence, which tends to prove facts necessary to arrive at such compensation.

It may be that the wide differences between the oral testimony offered by the land owner and that of applicant as to values and the amount of compensation would indicate a disregard of the true measure of damages, but such disregard is not clearly shown by this record. The fact that the verdict of the jury was less than any estimate of total damages made by witnesses testifying for the land owner, but more than any estimate of total damages made by witnesses testifying for the applicant, would indicate that the jury was not unduly influenced by the manner in which any of the witnesses arrived at their respective estimates, but instead made their own fair estimate of the damages found on the testimony of all witnesses, taking into account benefits and enhanced values over and beyond the net damages which will be derived by the residue. This view is particularly strengthened when it is considered that the jury was properly instructed on these matters and no assignment of error is, or could be, made with reference to the instructions given by the court. The verdict of the jury should "be accorded great, often controlling weight, when challenged for error in this Court." *Compton* v. *County Court, supra.*

We find no prejudicial error in the action of the trial court in admitting evidence as to the value of the land taken and damages to the residue offered by the land owners and in refusing to strike out such evidence on motion of the applicant.

Applicant complains of the trial court's action in holding that interest on the recovery commenced to accrue from the date of the verdict, and argues that interest should not begin to run until there has been an entry on the land.

The right of a land owner to interest on a judgment rendered in a proceeding in eminent domain from the time of entry on the land, even in the absence of statutory provision, is clear. *Simms* v. *Dillon,* 119 W. Va. 284, 193 S. E. 331; *State* v. *Painter,* 120 W. Va. 486, 199 S. E. 372. In instances where the State, or any of its political subdivisions, seeks to condemn lands for public use, and enters on the land prior to determination of the amount of compensation and damages, it is now provided by statute that interest commences to accrue on the date of the actual entry on the land. Chapter 142, Acts of the Legislature, 1939. In the instant case no entry on the land was made before the determination of the amount due the land owner, and therefore the provisions of Chapter 142, *idem,* is not applicable.

It should be pointed out, however, that although the verdict was returned on January 6, 1947, the trial court made an order on August 12, 1946, permitting the applicant "to at once enter upon, take possession of, appropriate and use the land for the public purposes aforesaid. * * *". At the time of the entry of the judgment order, an interest in the land passed from the land owner to applicant, even though title thereto does not pass until payment of the amount set forth in the judgment order. Code, 54-2-12. Bearing in mind that the trial court rendered judgment on the verdict, the amount of compensation and damages due land owner was determined as of the date of the verdict. Undoubtedly applicant owed the land owner the

amount so fixed. No reason is perceived why interest should not begin to accrue on the verdict from the date thereof in the same manner as provided in Code, 54-2-12.

Applicant in its brief and argument asserts that the verdict is excessive. We dispose of that contention by saying that the amount of the verdict is amply supported by the evidence adduced by the land owner, which has been hereinabove discussed and analyzed. We do not have the situation in this case which existed in the case of *Railway Co.* v. *Nighbert*, 46 W. Va. 202, 32 S. E. 1032. In this case the property is located in a populous community, and substantial damage will be done to the property, which had a value at the time of the trial ranging from $35,000.00, as shown by some of applicant's witnesses, to $85,000.00, the highest amount testified to by the land owner's witnesses.

Holding, as we do, that the evidence offered by the land owner is admissible, and it being shown thereby that all of the land owner's witnesses testified that the value of the land taken and the damages to the residue, less benefits, are substantially more than the verdict of the jury, we cannot say that the verdict is excessive as a matter of law.

In an attempt to minimize the damages to the residue, the applicant cites cases which hold that the land owner is entitled only to one means of access, citing *Heavner* v. *Commission*, 118 W. Va. 630, 191 S. E. 574; *Richmond* v. *Hinton*, 117 W. Va. 223, 185 S. E. 411; *Dick* v. *Hinton*, 109 W. Va. 708, 156 S. E. 81; *Road Com.* v. *Thomas*, 103 W. Va. 698, 138 S. E. 757, all of which deal with the right of access to land by street or road, and do not in any wise militate against or affect the right of a person owning land abutting on a street or road to access from said street or road into and over his own land. The right of access from a street or road to land abutting on such street or road is often a very substantial element of value. Access by means of a road or street to a lot or tract of land, as discussed in *Heavner* v. *Commission, supra,* and kindred cases

above cited, is an entirely different right from the right of access of an abutting land owner.

We have carefully considered the assignments of error made by the State, particularly the objections made to the testimony of various witnesses testifying for the land owner. We fail to find any prejudicial error. Therefore, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*

Fox, Judge, dissenting.

I am not in disagreement with the holding of the majority on the law of this case, as the same is expressed in the syllabus points attached to the opinion; but I do not think it was proper to permit the jury to consider the item of $12,600.00 estimated as the cost of filling the lot here involved, there not being sufficient evidence in the case that such a fill was necessary to the present use and enjoyment of the property as it had been used prior to the proposed taking thereof. It may be the fill will never be made, and, if made, might add, in a substantial way, to the value of the property. On this point alone, I would reverse the judgment, set aside the verdict, and remand the case for a new trial.